77509, 77510. MAYACAMAS CORPORATION v. GULFSTREAM
AEROSPACE CORPORATION; and vice versa.
(380 SE2d 303)

BENHAM, Judge.

These two cases arose as a result of breach of contract claims that Mayacamas Corporation and Gulfstream Aerospace Corporation asserted against each other. We have consolidated the cases in the interest of judicial economy. The threshold question to be resolved is whether the Georgia court that tried the cases had personal jurisdiction over the defendant Mayacamas under the Georgia Long Arm Statute (OCGA § 9-10-91). Mayacamas contends that it did not, and we agree.

Mayacamas, a California corporation, contracted to purchase an aircraft, the G-IV, from Gulfstream, a Georgia corporation with headquarters in Savannah. The aircraft had not been constructed at the time of the agreement, but Mayacamas, relying on certain representations allegedly made to it by Gulfstream representatives, entered into the contract and made a payment as scheduled based on assurances that it would receive one of the first several aircraft produced. When Mayacamas allegedly discovered that it had been misled by Gulfstream's agents, it refused to make further payments and attempted to rescind the contract. Using Georgia's Long Arm Statute, Gulfstream filed suit in Savannah against Mayacamas for breach of contract. Mayacamas countersued for breach of contract, fraud, negligent misrepresentation, and breach of duty of good faith and fair dealing, and moved to dismiss the case for lack of personal jurisdiction, denying that it had transacted business in Georgia within the meaning of OCGA § 9-10-91 (a). The trial court denied the motion to dismiss, and the case was tried before a jury. In the course of the trial, Mayacamas again raised the jurisdictional issue, and its motion to dismiss was again denied. The jury found in favor of Mayacamas in the main case and in its countersuit, and awarded it $900,000 in damages. Mayacamas moved for a new trial, which was denied. It appeals from the denial of its motion, raising the jurisdictional question and several other errors allegedly committed at trial (Case No. 77509). Gulfstream cross-appeals, asserting errors regarding the admission of evidence and other rulings at trial (Case No. 77510).

1. We conclude that the trial court erred in failing to grant Mayacamas' motion to dismiss for lack of personal jurisdiction when that motion was made during the trial. All of the evidence produced at trial, taken in the light most favorable to Gulfstream, was not suffi-

cient to establish that the Superior Court of Chatham County had personal jurisdiction over Mayacamas.

Georgia's Long Arm Statute states that the courts of this State may exercise personal jurisdiction over any nonresident as if he were a resident of the State, if in person or through an agent he: "(1) Transacts any business within this State. . . ." This has been interpreted to mean that "purposeful acts" must have been performed by the defendant to tie it to the State, and "[m]ere telephone or mail contact with an out-of-state defendant, or even the defendant's visits to this state, is insufficient to establish the purposeful activity with Georgia required by the 'Long Arm' statute. [Cit.]" *Wise v. State Board &c. of Architects*, 247 Ga. 206 (2) (274 SE2d 544) (1981). See also *Commercial Food Specialties v. Quality Food Equip. Co.*, 176 Ga. App. 892 (338 SE2d 865) (1985); *Capital Assoc. v. Gallopade Enterprises Intl.*, 172 Ga. App. 504 (323 SE2d 842) (1984). The United States Supreme Court has held that an individual's contract with an out-of-state party *alone* cannot automatically establish sufficient minimum contacts in the other party's home forum, and that the contract is " 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' [Cit.] It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 479 (105 SC 2174, 85 LE2d 528) (1985).

The facts in the case before us show that in early 1983, Gordon Lee Stubbs, an aircraft broker who was a consultant to Mayacamas and other companies, traveled to Savannah while researching large used aircraft, including a Gulfstream airplane, the Gulfstream Two. Stubbs happened to meet a Gulfstream salesman, Hank Strumph, who suggested that Stubbs buy a new Gulfstream G-IV, the aircraft in question, and resell it at a profit. After that conversation, Mayacamas and Gulfstream entered into negotiations for the purchase of the G-IV, which was not yet in production. The negotiations were conducted by letter, telephone, telex, and meetings held in California. The parties agreed on contract terms, and the contract was signed by Mayacamas' president, Mosher, in California on June 1, 1983, and was mailed to Savannah and signed by Gulfstream's representative on June 7, 1983, at which time it became a binding agreement. The contract stated, inter alia, that Mayacamas would pay $13,470,000 in several installments for the jet before delivery; that the aircraft was due for completion and delivery on or before February 1987; that once it was delivered, certain training and maintenance would be required which would take place in Georgia; and that "the agreement shall be

construed and interpreted in accordance with the laws of the State of Georgia." Mayacamas paid the required 5 percent of the purchase price at the time it entered into the contract. In September 1984, Mosher and his wife traveled to Atlanta for the National Business & Aircraft Association meeting, which is held in a different location each year. While attending the show Mosher met with Strumph, who showed him a G-IV mockup. In July 1985, shortly before the second installment was due on the aircraft, Mayacamas checked with Gulfstream representatives on the production schedule and was told that production was several months behind schedule and that additional jets were going to be built and sold to buyers before Mayacamas would receive its aircraft. Since this information contradicted that which Mayacamas had previously been given and did not comport with its expectations, Mayacamas refused to make additional payments and sought to rescind the contract. The suit and countersuit followed.

Applying the facts to the legal framework set out above, we find that the minimum contacts sufficient to link Mayacamas with this State in order that a court might exercise personal jurisdiction over Mayacamas did not exist. Basically, all that existed were the out-of-state negotiations that led to the signing of the contract and the contract itself, which the Supreme Court in *Burger King* indicated was not sufficient to meet the minimum contacts requirement. There was no subsequent course of dealing established between the parties as a result of the contract, nor did the future consequences of the contract come to fruition. Mayacamas did nothing beyond entering into the contract that constituted a purposeful engagement of activities within the forum. The fact that the company's president attended a trade show that was held in Atlanta on one occasion was fortuitous, and cannot be said to constitute transacting business in this state without a showing that his attendance was important to the performance of the contract. Compare *Prosser v. Hancock Bus Sales*, 181 Ga. App. 642 (353 SE2d 529) (1987), in which personal jurisdiction was found to exist over the out-of-state buyer of buses who came to Georgia to inspect and accept or reject the merchandise and to deliver payment therefor at that time. This court found that because those activities were clearly important to the performance of that contract, the exercise of jurisdiction over the defendant was justified.

Neither are we persuaded by the argument that the "choice of law" provision conferred jurisdiction over Mayacamas in Georgia. The U. S. Supreme Court in *Burger King*, supra, stated that "such a provision standing alone would be insufficient to ·confer jurisdiction, . . ." and that only when the provision was considered in light of the 20-year interdependent relationship the defendant had established with Burger King's Miami headquarters did it reinforce his deliberate

affiliation with the forum State and the reasonable foreseeability of possible litigation there. 471 U. S. at 482. In *Burger King*, the contract provided that " 'the choice of law designation does not *require* that all suits concerning this Agreement be filed in Florida,' " a statement that the court found "reasonably should have suggested to Rudzewicz that by negative implication such suits *could* be filed there." Id. fn. 24. There was no such clause in the contract under consideration here, and the mere statement that Georgia law would apply implied that suit would be brought in California but that California law would not apply. To further distinguish the *Burger King* case from our own, it is clear that Rudzewicz reaped the benefits that inured to him from the contract for over two years while operating his franchise, i.e., use of trademarks, trade names, company expertise, or training. Mayacamas, on the other hand, had received no benefit from its contract—it was still executory at the time of the alleged breach. All it had done was make a 5 percent down payment on a jet that did not exist, and all it had received was the promise that it would get a jet once it was built. Therefore, Mayacamas had not reinforced its deliberate affiliation with the forum state as had Rudzewicz. The choice of law provision, "standing alone," was insufficient to confer jurisdiction. For the reasons outlined above, we find that the trial court erred in denying Mayacamas' motion to dismiss for lack of personal jurisdiction. See also *Gust v. Flint*, 257 Ga. 129 (356 SE2d 513) (1987).

2. In light of the decision reached in Division 1 of this opinion, the other enumerations of error raised by Mayacamas in its appeal and by Gulfstream in its cross-appeal are rendered moot and we need not address them. See *Saunders v. Padovani*, 258 Ga. 866 (375 SE2d 853) (1989).

*Judgment reversed in Case No. 77509. Appeal dismissed in Case No. 77510. McMurray, P. J., and Pope, J., concur.*

DECIDED MARCH 1, 1989 —
REHEARING DENIED MARCH 23, 1989 — 

*Oliver, Maner & Gray, James L. Pannell, Wendy W. Williamson*, for appellant.
*Adams, Gardner, Ellis, Inglesby & Falligant, Brent Savage, Thomas A. Nash, Jr., George L. Lewis*, for appellee.