**COMMERCIAL CASUALTY
INSURANCE COMPANY,
INC., Plaintiff,**

v.

**BSE MANAGEMENT, INC., et
al., Defendants.**

**Civ. A. No. 1:89–CV–1209–JOF.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 30, 1990.

---

**512**

Robert E. Corry, Jr., Dennis, Corry, Porter & Thornton, Atlanta, Ga., for plaintiff.

H. Sanders Carter, Jr. and Elizabeth Johnson Bondurant, Carter & Ansley and Harry J. Winograd and Lissa Gill Newman, Alembik, Fine & Callner, Atlanta, Ga., for defendants.

### ORDER

FORRESTER, District Judge.

This matter is before the court on defendant BSE Management, Inc.'s motion to dismiss for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). For the reasons discussed below, the motion is GRANTED.

### I. STATEMENT OF THE CASE

#### A. *Complaint*

The complaint alleges that the plaintiff, Commercial Casualty Insurance, a Georgia corporation, issued an insurance policy to defendant, BSE Management, a California corporation, for general and professional liability insurance coverage. The other defendants, individuals and companies located in Europe, were to provide reinsurance. Plaintiff relied on the other defendants' assurances that adequate reinsurance had been procured for the policy, but discovered that the reinsurance never was procured. Without evidence of reinsurance, BSE refused to accept coverage under the plaintiff's program. In an effort to resolve the dispute between plaintiff and BSE, plaintiff paid BSE approximately $195,000 towards another liability insurance policy.

The only jurisdictional allegation in the complaint is that "each of the above-named defendants has transacted business in the State of Georgia and is subject to the jurisdiction of this Court pursuant to the Georgia Long–Arm Statute, O.C.G.A. § 9–10–90." Complaint, ¶ 11. Commercial Casualty seeks the return of the money paid to BSE, and a determination of liabilities between plaintiff and BSE. It also

seeks recovery against the other defendants for negligence, fraud, breach of fiduciary relationship, conspiracy, and for violation of the RICO statute.

### B. *Affidavits*

In support of defendant's motion and plaintiff's response, the parties have submitted affidavits detailing certain facts about the relationship between the parties. The plaintiff's vice-president, Michael Johnston, states in his affidavit that an insurance contract was issued March 2, 1989, effective February 9, 1989, for general and professional liability insurance. This contract was issued after "a series of protracted substantive negotiations between BSE and Commercial Casualty, both directly and through an intermediary, Heritage Broker, Ltd." Johnston Affidavit, ¶ 3. This contract was a unique contract customized to meet the defendant's needs.

The plaintiff understood during these negotiations that Heritage and an employee of Heritage, Joe Greenwald, were acting as agents for BSE in the negotiations. However, the defendant has presented a second affidavit of Mr. Greenwald, in which he states that Heritage had a Producer/Agency Agreement with the plaintiff effective December 1, 1988, and that Heritage received a 17.5 percent commission from the plaintiff for the sale of the policy to BSE.

Johnston spoke with Robert Rosenstein, Chief Financial Officer of BSE, at least six times either directly or through Heritage by phone, facsimile, or letter, and in these conversations negotiated specific terms of the policy. At all times, Johnston was in Atlanta, Greenwald was in New York, and Rosenstein was in California.

After execution of the contract, the plaintiff discovered the reinsurance had not been purchased, giving rise to the claims against the other defendants. A dispute arose between the plaintiff and defendant about the obligations under the policy. Johnston received a phone call almost every business day between April 15 and May 15 from Rosenstein.

Johnston states in his affidavit that Georgia insurance laws were more favorable than those of other states, especially California, and this enables a Georgia company to offer more favorable premiums and coverage than a California company.

An affidavit of Greenwald was supplied as an exhibit in support of plaintiff's response to defendant's motion, and one by Greenwald was provided by defendant in support of its reply. These two affidavits show that Greenwald was contacted by Rosenstein by telephone after Heritage sent out a blind mail solicitation. He was first contacted in May 1988, and in August 1988 procured insurance for BSE through another company, located in Wisconsin. At no time did Heritage have a written contract with BSE. When they began discussing the plaintiff's company in January 1989, Greenwald made Rosenstein aware that the plaintiff was a Georgia company. Greenwald communicated with Rosenstein and Johnston by facsimile, phone, and letter each fifty times between December 1988 and May 1989. Eighty percent of these contacts were after problems arose with the reinsurance. In his first affidavit, he says he considered himself to be acting for BSE. However, he does state that he had a producer/agency agreement with the plaintiff and received a commission upon the sale of the policy to BSE. All of the activities he carried on in this regard were from his office in New York. Heritage Brokerage is a New York company, and only has offices in New York, though it is licensed in the states in which business is solicited under the agreement, presumably including Georgia. He received a letter on February 8, 1989 with a check for the premium deposit, and he arranged for the execution of the contract.

The defendant's agent, Robert Rosenstein, states that BSE is a California corporation with its principal place of business in California. They received a blind solicitation in the mail from Heritage in 1988. He contacted Greenwald, and through him got insurance through a Wisconsin company. Greenwald pointed out to him in November or December of 1988 that another company, Commercial Casualty, might have more favorable terms. He identified Commercial

Casualty as a Georgia corporation. Rosenstein had not heard of Commercial Casualty before this time. Defendant has included several copies of facsimiles between himself and Greenwald prior to establishing the contract. Rosenstein wrote a check to Greenwald for the premium deposit. The copy of the check included with defendant's materials shows that it was made out to be paid to Commercial Casualty, but included a New York address and was marked to the attention of Joe Greenwald.

Johnston sent Rosenstein two letters in February 1989 assuring him that Commercial Casualty had adequate reinsurance. The policy was delivered to BSE in California. After it was delivered, the plaintiff received additional information from the plaintiff either from Greenwald, Johnston, or one of the reinsurers. There were also several facsimiles and letters regarding the reinsurance and the cancellation of the contract, as well as an attempt to resolve the situation by an agreement between the parties.

No employee of BSE ever entered Georgia. Moreover, defendant states that it did not initiate contact with the plaintiff, but rather was contacted in California by a New York broker. Defendant has no office or employees in Georgia and has never sought to do business in Georgia.

The insurance policy specifically provided that it was issued under the Direct Placement of Insurance Laws of the State of California.

## II. CONCLUSIONS OF LAW

■ In considering a motion to dismiss for lack of personal jurisdiction, allegations in the complaint which are not controverted by the defendant's evidence must be accepted as true. *Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843 (11th Cir.1988). Conflicts in the facts are to be resolved in the plaintiff's favor for determining if a *prima facie* case of personal jurisdiction exists. *Id.; Morris v. SSE, Inc.*, 843 F.2d 489 (11th Cir.1988). The plaintiff has the burden of proof to establish jurisdiction in this court. *Morris*, 843 F.2d at 489. However, when the motion is to be decided at a preliminary stage of the proceedings without a hearing, the plaintiff need only show a *prima facie* case. *Delong Equipment Co.*, 840 F.2d at 843. The plaintiff must prove the jurisdictional facts by a preponderance of the evidence at a hearing or trial. *Brown v. Flowers Industries, Inc.*, 688 F.2d 328 (5th Cir.1982), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983). The court is obligated to deny the motion if the plaintiff alleges sufficient facts to support a reasonable inference that the defendant can be subjected to the jurisdiction of this court. *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577 (5th Cir. 1986).

■ In a diversity action, a federal court can assert jurisdiction over a non-resident only to the extent permitted by the long-arm statute of the forum state. *Complete Concepts, Ltd. v. General Handbag Corp.*, 880 F.2d 382, 388 (11th Cir.1989). Application of the state law must also comply with federal due process through the minimum contacts test developed by the Supreme Court under *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. This case is one where the contacts must be evaluated to determine if plaintiff shows specific personal jurisdiction based on the defendant's contacts with the forum state related to the cause of action, as opposed to general jurisdiction which arises from continuous and systematic contacts with the forum state. *See Delong Equipment Co.*, 840 F.2d at 853.

### A. *Georgia Long–Arm Statute*

The Georgia long-arm statute, O.C.G.A. § 9–10–91, provides that a Georgia court may exercise personal jurisdiction over any non-resident,

> as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:

> (1) transacts any business within the state; .... O.C.G.A. § 9–10–91. The

Georgia courts have stated repeatedly that this section confers jurisdiction to the maximum extent allowable under due process. *First United Bank v. First National Bank*, 255 Ga. 505, 340 S.E.2d 597 (1986). The Eleventh Circuit has noted on several occasions that this section is coterminous with due process. *Complete Concepts*, 880 F.2d at 388. Recent Georgia case law has raised a question of whether the Georgia long-arm statute is to be construed to the maximum extent allowable under due process. *Gust v. Flint*, 257 Ga. 129, 356 S.E.2d 513 (1987), *rev'g, Flint v. Gust*, 180 Ga.App. 904, 351 S.E.2d 95 (1986), discussed in, *Evans v. American Surplus Underwriters Corp.*, No. 89–187 (N.D.Ga. October 10, 1989). *See also Irving Commercial Corp. v. Soundfloor Coverings, Inc.*, 595 F.Supp. 536 (N.D.Ga.1984). As stated in a recent case decided by this court, *Electronic Transaction Network v. Katz*, 734 F.Supp. 492 (N.D.Ga.1989), the Georgia courts have not yet repudiated the language in many cases that § 9–10–91(1) is coextensive with due process, and the Eleventh Circuit has consistently interpreted the Georgia long-arm statute as being coextensive with due process, most recently in *Complete Concepts*, 880 F.2d at 382. Therefore, the court will consider that the long-arm statute is coextensive with due process, but will consider and apply Georgia case law to assure consistency with state decisions.

### B. *Constitutional Due Process*

The basic inquiry in a personal jurisdiction case such as this is whether the defendant has such minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. The Supreme Court has repeatedly stated that the "constitutional touchstone" is whether the defendant purposefully established minimum contacts in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Once sufficient purposeful contacts have been shown, the

court must consider whether the assertion of personal jurisdiction comports with fair play and substantial justice. *Id.* at 476, 105 S.Ct. at 2184.

Two factors, foreseeability and purposeful availment, are considered when determining if there has been sufficient contact between the defendant and the forum. *Id.* The foreseeability that is critical to due process analysis is that the defendant's conduct in connection with the forum state is such that he would reasonably anticipate being haled into court there. *Id.* at 474, 105 S.Ct. at 2183, quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The purposeful availment requirement seeks to ensure that a non-resident defendant "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183. There must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *World–Wide Volkswagen*, 444 U.S. at 298, 100 S.Ct. at 567, quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Moreover, while an individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts with the forum, factors connected with the contract must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum. *Burger King*, 471 U.S. at 478–79, 105 S.Ct. at 2185–86. These factors include the prior negotiations and contemplated future consequences of the contract, the terms of the contract, and the parties' actual course of dealing.

Once it has been concluded that a defendant purposefully established minimum contacts with the forum state, the contacts must be considered in light of "reasonableness" factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. *Burger King*, 471 U.S. at 476, 105 S.Ct. at

2184. These factors include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Id.* at 477, 105 S.Ct. at 2184. Minimum contacts and the fairness prong work together to establish or deny jurisdiction. The strong showing of either can compensate for a lesser showing of the other. *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184.

Merely contracting with a Georgia resident does not provide enough contacts to assert jurisdiction. *Burger King*, 471 U.S. at 478–79, 105 S.Ct. at 2185–86; *A.I.M. International, Inc. v. Battenfeld Extrusion Systems, Inc.*, 116 F.R.D. 633 (M.D. Ga.1987). However, the Supreme Court has recognized the reality that a substantial amount of business is transacted by mail and phone without physical presence in the forum. *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184. If a commercial actor's efforts are purposefully directed toward the residents of other states, physical presence is not required in order to assert jurisdiction. *Id.* Though merely contracting with a non-resident is insufficient to invoke jurisdiction, a contract is the intermediate step which ties up prior negotiations and future consequences. Therefore, those prior negotiations and future consequences in the course of conduct of the parties are the key to establishing minimum contacts.

■ Under Georgia law, mere telephone or mail contact with an out-of-state defendant is insufficient to establish purposeful activity with Georgia required by the long-arm statute. *Commercial Food Specialties, Inc. v. Quality Food Equipment Co.*, 176 Ga.App. 892, 338 S.E.2d 865 (1985); *Capital Associates, Inc. v. Gallopade Enterprises International, Inc.*, 172 Ga.App. 504, 323 S.E.2d 842 (1984). For example, in *Commercial Food Specialties*, the out-of-state defendant shipped equipment into Georgia after the plaintiff ordered it by mail and mailed a payment to the defendant. The court found this lacked the contacts necessary to assert jurisdiction. Similarly, in *Capital Associates*, the out-of-state defendant leased a copier from the plaintiff, the lease was accepted in Georgia, and the defendant mailed payments to the plaintiff in Georgia. The court also found in this case that this was insufficient to establish jurisdiction. In *Graphic Machinery, Inc. v. H.M.S. Direct Mail Service, Inc.*, 158 Ga.App. 599, 281 S.E.2d 343 (1981), a New York defendant placed a mail order with a Georgia company, the plaintiff, which then sent the equipment to the defendant, and when problems arose, sent an agent to fix the machine. The court held that this course of conduct did not constitute transacting business within the state within the meaning of the long-arm statute.

■ Considering all of the above legal principles, and the facts as presented in this motion, plaintiff has failed to present a *prima facie* case of personal jurisdiction over the defendant. All the dealings between the parties were through the mail, telephone or facsimile machine. There was no personal contact, and the defendant never entered the state of Georgia. More importantly, most of the contacts between the parties were through Heritage, a New York company. Heritage was acting as BSE's agent, and Heritage had many contacts with Commercial Casualty in connection with this contract, including numerous phone and fax negotiations. There was some prior negotiation before the contract was issued, and the policy itself was more than a boilerplate contract. However, most of the direct contact between the plaintiff and defendant was after problems arose, and these contacts were totally unanticipated by the defendant when it established contact with the plaintiff through Heritage. Furthermore, the defendant was contacted first by Heritage and cannot be said to have reached out to the state of Georgia. Defendant's payments were made to Heritage in New York.

The terms of the contract also do not support the conclusion that the defendant

was subject to jurisdiction in Georgia. The contract was issued under California laws. It was in force from February 1989 to February 1990. The premium payments plan shows that a deposit was due in April 1989 and nine installments were due between May 1989 and January 1990, to be billed to insured by the company. There is no indication, however, whether the payments would be made to Commercial Casualty in Georgia or to Heritage in New York. There is no choice of law provision in the contract.

None of the negotiations, or execution by the defendant of the contract occurred in Georgia. *Cf. Capital Associates,* 172 Ga. App. at 504, 323 S.E.2d 842. The contract did not create a long-term relationship between the parties in which the defendant agreed to numerous obligations owed to defendant as in *Burger King.* This case is similar to both *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.,* 792 F.2d 989 (11th Cir.1986), and *Mayacamas Corp. v. Gulfstream Aerospace Corp.,* 190 Ga. App. 892, 380 S.E.2d 303 (1989). In *Sea Lift,* the only contact, other than the contract between parties, was the solicitation by the defendant's agents in the forum state. Because the contract at issue was a "one-shot operation," 792 F.2d at 994, and the plaintiff's duties were to be performed exclusively in Costa Rica, solicitation did not rise to the level of purposeful availment. Moreover, the actual mailing of payments to the forum state is not entitled to great weight in the minimum contacts determination. *Id.* Similarly, in the present case a continuing relationship between the parties was not established, even though the contract was to be in force over a period of one year. Also, here there was not even any physical presence by any of the defendant's agents in the forum state as there was in *Sea Lift.*

In *Mayacamas,* 190 Ga.App. at 892, 380 S.E.2d 303, a California corporation contracted with a Georgia corporation to buy an airplane. The negotiations were conducted over the telephone, by telex, and in meetings in California. The contract was signed in California and Georgia. The contract also provided for some personnel training and maintenance of the airplane in Georgia once it was delivered, and provided that Georgia law would be used to construe the contract. The defendant paid five percent of the purchase price, but later attempted to rescind the contract when it learned of certain misrepresentations. In *Mayacamas,* the California corporation was prompted to begin negotiations with the Georgia corporation through an aircraft broker who visited Georgia and the Georgia manufacturer. Also, in that case, the president of the California corporation attended a trade show and met with a salesman from the plaintiff company. As in the present case, "[t]here was no subsequent course of dealing established between the parties as a result of the contract, nor did the future consequences of the contract come to fruition." 190 Ga. App. at 894, 380 S.E.2d 303. The court held that the president's attending a trade show on one occasion was fortuitous and did not constitute transacting business without a showing that his attendance was important to the performance of the contract. The company "had not reinforced its deliberate affiliation with the forum state." *Id.* at 895, 380 S.E.2d 303. In the present case, there were to be no future contacts with Georgia, unlike the *Mayacamas* contract. This case is also similar in that the negotiations and purchase were assisted by a broker, who in *Mayacamas* had physical contracts with the state. It appears that the defendant in *Mayacamas* had more contacts than does BSE. *See also Capital Associates,* 172 Ga.App. at 504, 323 S.E.2d 842; *Graphic Machinery,* 158 Ga.App. at 599, 281 S.E.2d 343.

Plaintiff places great reliance on an opinion from the District of New Jersey, *Alchemie International, Inc. v. Metal World, Inc.,* 523 F.Supp. 1039 (D.N.J.1981). That court placed great reliance on the mail and phone contacts between the parties in the solicitation and negotiation of the contract. It is clear as a matter of law, that mail and phone contacts can support jurisdiction, and physical presence need not be established to confer jurisdiction. *Burger King,* 471 U.S. at 462, 105 S.Ct. at 2176. How-

ever, that case had significant contacts not present in the instant case. The New Jersey court placed strong reliance on the fact that the defendant solicited the contract, and that the contract contained a provision that New Jersey law would apply to its construction. Also, the defendant contracted directly with the plaintiff, and not through an intermediary as in the present case.

Plaintiff also emphasizes that BSE purposefully reached out and contracted with a Georgia company, which because of the favorable Georgia laws was able to offer better terms. However, plaintiff's evidence does not support this conclusion. In fact, the evidence shows that it was little more than random chance that defendant ended up getting the policy from a Georgia company. Plaintiff's arguments that the favorable Georgia laws influenced the defendant's decision is not persuasive. Rosenstein stated in his affidavit that he accepted the policy because of the rates and coverage offered. Simply because the rate is lower due to the favorable Georgia laws is not relevant. Rosenstein was working through a New York broker, and just as easily could have purchased a policy from a company in any state with more favorable insurance laws.

Even if the factors described above show that the defendant's conduct shows he would reasonably anticipate being haled into court here and that he purposefully availed himself of the privilege of conducting activities within Georgia, notions of fairness and substantial justice indicate jurisdiction should not be exercised.

Even though Heritage was acting as defendant's agents in the negotiations, there is undisputed evidence, even some presented by plaintiff, that shows Heritage was acting as plaintiff's agent as well. Heritage had a contractual relationship with the plaintiff prior to negotiations for this contract. It would be unfair to subject the defendant to jurisdiction here solely because the defendant established a relationship with a broker who also had a relationship with a Georgia company. The defendant did not seek out Heritage because it

was an agent for this company, but rather it was Heritage who solicited the defendant's business, and directed the defendant to the plaintiff company. Also, it would be unfair to subject the defendant to jurisdiction in Georgia based on contacts which occurred after the problems arose under the contract, as the contacts were brought about by the plaintiff, or are at least attributable to plaintiff in this context even if the fault actually lies with the other defendants.

The reasonableness factors set out in the *Burger King* opinion cannot compensate for the low showing of minimum contacts in this case. The burden on defendant to litigate in Georgia, though no more burden than any litigant required to defend a lawsuit in a distant forum, is sufficiently great considering its limited contacts with Georgia to weigh against exercising jurisdiction. The state of Georgia clearly has an interest in adjudicating a dispute between a Georgia company and a non-resident. Plaintiff contends that only in the Georgia forum can all the defendants be brought together and this controversy be resolved in a single forum. However, the dispute between this defendant and the other defendants is severable, and though there will be some overlap of facts, the legal issues are completely separate. Trying the case in two forums would not cause an excessive amount of inconvenience. The overall interest of the interstate judicial system and the several states is not especially compelling here.

Upon consideration of all the facts presented, taken in a light most favorable to the plaintiff, plaintiff has not presented a *prima facie* case of personal jurisdiction over this defendant. Almost all of the defendant's dealings prior to the execution of the contract were with a New York company. The defendant did not reach out to Georgia to establish a contact with this company; rather, plaintiff reached out to defendant. The fact that defendant ended up contracting with a Georgia corporation was little more than random or fortuitous, and the contacts between the parties after the reinsurance problem arose were not previously anticipated by defendant and should not count heavily in the jurisdiction-

al analysis. Also, the contract was issued under California law. Therefore, in the present case, there is little more than a contract with a Georgia corporation, insufficient to confer jurisdiction in a Georgia court.

Defendant BSE's motion to dismiss for lack of personal jurisdiction is GRANTED.