A95A0042, A95A0043. BEVERAGE MANAGEMENT SOLUTIONS, INC. v. YANKEE SPIRITS, INC.; and vice versa.
(460 SE2d 564)

RUFFIN, Judge.

Beverage Management Solutions, Inc. ("BMS") sued Yankee Spirits, Inc. ("Yankee Spirits") for breach of contract in connection with the sale of a computerized beverage management system to Yankee Spirits. After a bench trial, the trial court entered judgment in favor of BMS and awarded it lost profits. In Case No. A95A0042, BMS appeals the trial court's denial of attorney fees, pre-judgment interest and litigation costs. In Case No. A95A0043, Yankee Spirits appeals the judgment on the merits. We will first consider Yankee Spirits' appeal.

1. Yankee Spirits, a Massachusetts corporation, contends the trial court erred in failing to dismiss the complaint for lack of personal jurisdiction.

The evidence shows that in August 1991, Walter Lee, president of Computer Source, Inc. ("CSI"), a Macon, Georgia corporation, demonstrated his beverage management system in Worcester, Massachusetts for Yankee Spirits' representatives. Yankee Spirits was a large volume liquor retailer in Massachusetts interested in enhancing

its current system. The demonstration was arranged by an IBM representative in Massachusetts who was working with CSI. Shortly thereafter, a CSI salesman traveled to Yankee Spirits' offices with a proposal for the sale, installation and service of a system at a cost of $232,925. Yankee Spirits found the proposal too expensive and rejected it. Lee then modified the proposal, reducing the cost to $146,951 and telephoned Yankee Spirits with the new offer. Yankee Spirits orally agreed to the modified proposal. CSI then mailed a written purchase agreement to Yankee Spirits which was signed in Massachusetts and returned to Georgia for Lee's signature. The agreement contained the following provision: "Any and all claims which Buyer may now or hereafter have against Seller, for whatever cause and whether in contract, tort or otherwise, shall be forever barred unless filed in a court of competent jurisdiction in Bibb County, Georgia, U.S.A. within two (2) years after the occurrence of said default, or in the event such default is not discovered by the injured party when it has occurred, more than two (2) years after such default could, in the exercise of due diligence, have been discovered by such party, and Buyer hereby consents to the jurisdiction and venue of such courts. In the event of any such action, Buyer agrees that service of process may be completed by registered or certified mail."

Over the next several months, in preparation for the installation of the system, Yankee Spirits began sending its product data base and information regarding its current inventory data to Georgia for conversion into the new system. Communications between the companies over the telephone, by fax and by mail revealed that the system would require significant modification in order to meet Yankee Spirits' needs.

In December 1991, BMS purchased CSI's assets, including the contract at issue. Yankee Spirits executed an "Acknowledgement and Acceptance of Assignment" in connection with the assignment of the agreement to BMS. The document was faxed to Massachusetts for execution, and Yankee Spirits mailed it back to BMS in Georgia. Discussions continued with BMS regarding modifications to the system. During the discussions between Yankee Spirits, CSI, and BMS, no representative of Yankee Spirits ever came to Georgia. In March 1992, because BMS proposed additional charges for the modifications and BMS could not state with certainty when the modifications could be completed, Yankee Spirits decided not to go forward with the contract.

"Georgia's Long Arm Statute states that the courts of this State may exercise personal jurisdiction over any nonresident as if he were a resident of the State, if in person or through an agent he: '(1) Transacts any business within this State. . . .' This has been interpreted to mean that 'purposeful acts' must have been performed by

the defendant to tie it to the State, and '[m]ere telephone or mail contact with an out-of-state defendant, or even the defendant's visits to this state, is insufficient to establish the purposeful activity with Georgia required by the "Long Arm" statute. [Cit.]' [Cits.] The United States Supreme Court has held that an individual's contract with an out-of-state party *alone* cannot automatically establish sufficient minimum contacts in the other party's home forum, and that the contract is ' "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." [Cit.] It is these factors — prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing — that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.' [Cit.]" *Mayacamas Corp. v. Gulfstream Aerospace Corp.*, 190 Ga. App. 892, 893 (1) (380 SE2d 303) (1989), citing *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 479 (105 SC 2174, 85 LE2d 528) (1985).

Just as we held in *Mayacamas*, Yankee Spirits contends the facts demonstrate that "the minimum contacts sufficient to link [Yankee Spirits] with this State in order that a court might exercise personal jurisdiction over [Yankee Spirits] did not exist." Id. at 894. We agree. In the instant case and in *Mayacamas*, there were out-of-state negotiations which led to the signing of an agreement. But that agreement *alone* is not sufficient to meet the minimum contacts requirement. Id. Nor does the mere return of the acknowledgment of assignment to Georgia by mail meet the requirement. See *Wise v. State Board &c. of Architects*, 247 Ga. 206 (2) (274 SE2d 544) (1981).

BMS contends that by sending computer data to Georgia, Yankee Spirits conducted "purposeful acts" sufficient to tie it to Georgia. However, those preparatory and incidental acts were "intermediate steps" toward the performance of the purchase agreement which contemplated the sale, installation and service of a system in Massachusetts. See *Mayacamas*, supra at 893.

BMS also contends Yankee Spirits waived any defense of personal jurisdiction, having submitted to jurisdiction in Bibb County by virtue of the provision in the purchase agreement set forth above. Although parties may waive personal jurisdiction by contract, in the provision upon which BMS relies, Yankee Spirits did not waive personal jurisdiction for causes of action filed against Yankee Spirits. Compare *C & S Capital Corp. v. Sweetwater Homes*, 191 Ga. App. 571 (382 SE2d 399) (1989). Rather, the provision requires Yankee Spirits to file any claim it has against BMS in Bibb County. In the context of this case, where the seller is suing the buyer, the provision is not applicable.

Based on the foregoing, we find the trial court erred in failing to

dismiss for lack of personal jurisdiction.

2. In light of our decision in Division 1, we need not address Yankee Spirits' remaining enumerations of error or those enumerations raised by BMS in its appeal. See *Mayacamas*, supra at 895.

*Judgment reversed in Case No. A95A0043. Appeal dismissed in Case No. A95A0042. Beasley, C. J., and Pope, P. J., concur.*

DECIDED JULY 14, 1995 —
RECONSIDERATION DENIED JULY 26, 1995 —

*Parker, Johnson, Cook & Dunlevie, G. William Long III, Everett W. Gee III*, for appellant.

*Anderson, Walker & Reichert, Walter H. Bush, Jr., Travis M. Trimble*, for appellee.