## A00A1977. GENESIS RESEARCH INSTITUTE, INC. v. ROXBURY PRESS, INC.
(542 SE2d 637)

MIKELL, Judge.

Genesis Research Institute, Inc. ("GRI") appeals from the trial court's dismissal, for lack of personal jurisdiction, of its complaint against Roxbury Press, Inc. d/b/a Mailings Clearing House ("MCH") for breach of contract and breach of warranty. In its enumeration of errors, GRI argues that the trial court failed to resolve disputes of fact in its favor and, consequently, erred in granting MCH's motion to dismiss. We agree and therefore reverse.

"On a motion to dismiss for lack of personal jurisdiction, the defendant bears the onus of proving lack of personal jurisdiction."[1] Further, "any disputes of fact in the written submissions supporting and opposing the motion to dismiss are resolved in favor of the party asserting the existence of personal jurisdiction."[2] Finally, because the motion was decided on the basis of written submissions, the appellate standard of review is nondeferential.[3]

Viewing the facts in the light most favorable to the exercise of personal jurisdiction, the record shows that GRI, a Georgia corporation owned by Rebecca Uggla, is a direct mail order business. GRI markets dietary supplements through the use of mailing lists it obtains from "list brokers." MCH, a Missouri corporation, served as GRI's list broker for the "Strennix List," which is at issue in this lawsuit. The list broker at MCH with whom Uggla worked is Jane Tansey.

In preparation for GRI's October 1998 mailing, Tansey included information about the Strennix List in a packet she forwarded to Uggla.[4] Tansey told Uggla that she knew about the Strennix List because it was managed by her daughter's teacher's aunt. In Novem-

---

[1] (Citation and punctuation omitted.) *ETS Payphone v. TK Indus.*, 236 Ga. App. 713 (513 SE2d 257) (1999).

[2] *HTL Sp. Z O.O. v. Nissho Corp.*, 245 Ga. App. 625, 626 (538 SE2d 525) (2000).

[3] *Scovill Fasteners v. Sure-Snap Corp.*, 207 Ga. App. 539, 540 (428 SE2d 435) (1993).

[4] Strennix is a dietary supplement for erectile dysfunctions. GRI also sells supplements for this problem.

ber 1998, Tansey attended a trade show in Atlanta, visited Uggla's home in Suwanee, Georgia, and treated her to dinner. Uggla deposed that during dinner, she and Tansey "hammered out" exactly what would be mailed in GRI's January mailing, which is the largest mailing each year. Tansey recommended that GRI send mailings to 100,000 names from the Strennix List. When Uggla expressed concerns about mailing to so many people, Tansey assured her that this was a special circumstance because of Tansey's contact with the list owner. Subsequently, GRI ordered 100,000 names from the Strennix List. Because over 80 percent of the names on the list were not recent purchasers of vitamin supplements, contrary to the terms of the purchase order, GRI filed the instant action.

"OCGA § 9-10-91 (1) provides that courts of this state may exercise personal jurisdiction over any nonresident if that nonresident transacts any business within this state."[5] "Our Supreme Court has construed the term 'transacting any business' most liberally to uphold the jurisdiction of the Georgia courts."[6]

> The constitutional touchstone is whether the defendant purposefully established minimum contacts in the forum State, that is, whether the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. . . . Prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing[,] must be evaluated in determining whether the defendant has purposefully established minimum contacts within the forum.[7]

In this case, resolving disputed facts in favor of the plaintiff, we find evidence in the record that while Tansey was in Georgia, she and Uggla negotiated the number of names that GRI would purchase from the Strennix List, after which MCH issued a purchase order to the list owner.[8] We have previously held that in-state negotiations are sufficient "minimum contacts" to support the exercise of jurisdiction,[9] and we find that in-state negotiations transpired in this case.

---

[5] (Citation and punctuation omitted.) *Habersham Metal Products Co. v. Huntsville Fastener &c.*, 216 Ga. App. 646, 647 (455 SE2d 356) (1995).

[6] *Shea/Rustin, Inc. v. Home Fashion Guild*, 135 Ga. App. 88 (217 SE2d 405) (1975).

[7] (Citation and punctuation omitted.) *Pleats, Inc. v. OMSA, Inc.*, 211 Ga. App. 643, 646 (3) (b) (440 SE2d 214) (1993).

[8] There is evidence in the record that before MCH issued its purchase order to the list owner, GRI issued a purchase order to MCH.

[9] See *Shea/Rustin*, supra (negotiations about production details in Georgia, which were later confirmed in a purchase order, constituted the required minimum contacts); *Delta Equities v. Larwin Mtg. Investors*, 133 Ga. App. 382, 384 (1) (211 SE2d 9) (1974) (minimum

In support of its argument that the trial court lacked jurisdiction, MCH submitted Tansey's affidavit wherein she states that no business was transacted. MCH argues that no negotiations occurred in Georgia because Tansey could not negotiate a contract between GRI and the list owner. Thus, it was not possible for them to transact business in this state. This argument, however, is inapposite.

The agreement at issue here is between GRI and MCH, not GRI and the list owner. The fact that Tansey could not negotiate the final cost of the list is not relevant. She could, and, it appears, did, negotiate the number of names that would be ordered from the list, which was essential to GRI's agreement with MCH and affected MCH's fee.[10]

MCH contends that this court should apply its decisions in *Mayacamas Corp. v. Gulfstream Aerospace Corp.*[11] and *Beverage Mgmt. Solutions v. Yankee Spirits*[12] to affirm the trial court's grant of its motion to dismiss. We decline to do so because both cases are distinguishable. In *Mayacamas*, "all that existed were the out-of-state negotiations that led to the signing of the contract. . . . There was no subsequent course of dealing established between the parties as a result of the contract, nor did the future consequences of the contract come to fruition."[13] In this case, in-state negotiations occurred and the list was ordered, so the consequences of the contract came to fruition. In *Yankee Spirits*, also, "there were out-of-state negotiations that led to the signing of an agreement."[14] Here, again, there were in-state negotiations that led to the execution and completion of a purchase order.

While we agree with MCH that GRI and MCH's telephone and mail communications and Tansey's attendance at a trade show in Georgia are insufficient to establish the purposeful activity required by OCGA § 9-10-91 (1) for the exercise of long arm jurisdiction,[15] this case involves another pivotal factor. The negotiation of the terms of an agreement within the confines of the State of Georgia constitutes transacting business within the meaning of the Georgia Long Arm Statute, OCGA § 9-10-91 (1). Accordingly, we find that MCH's con-

---

contacts were established where defendants twice visited Georgia to negotiate a loan, even though final negotiations occurred over the telephone).

[10] In a reply brief filed in the trial court, MCH acknowledged that the agreement between GRI and MCH provided that GRI would pay MCH 20 percent of the mailing list rental fee for its services in obtaining the list.

[11] 190 Ga. App. 892 (380 SE2d 303) (1989).

[12] 218 Ga. App. 95 (460 SE2d 564) (1995).

[13] *Mayacamas*, supra, 190 Ga. App. at 894 (1).

[14] *Yankee Spirits*, supra, 218 Ga. App. at 97 (1). The only other act the plaintiff asserted in favor of jurisdiction was the transmission of data necessary to complete the contract, which was held to be an intermediate step toward the performance of the agreement.

[15] *Mayacamas*, supra, 190 Ga. App. at 893.

duct was such that it should reasonably anticipate being haled into court here.

*Judgment reversed. Pope, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 21, 2000 —
RECONSIDERATION DENIED JANUARY 31, 2001 —

*Schulten, Ward & Turner, David L. Turner, Lea B. Kirschner*, for appellant.

*Andersen, Davidson & Tate, Thomas T. Tate, Ligia P. Arias, Christopher R. Stovall*, for appellee.