A04A1251. CATHOLIC STEWARDSHIP CONSULTANTS, INC. v. RUOTOLO ASSOCIATES, INC. et al.
(608 SE2d 1)

ADAMS, Judge.
Catholic Stewardship Consultants, Inc. ("CSC") sued Ruotolo Associates, Inc., George Ruotolo, Joseph Caporale, and Rob DeMartinis for breach of contract, theft of proprietary information, and misrepresentation. The trial court granted the defendants' motion to

---

[2] Lemons does not assert on appeal that a reversal is warranted because the state argued facts not in evidence.

dismiss for lack of personal jurisdiction. CSC appeals, and we affirm for the reasons set forth below.

"[A] defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving lack of jurisdiction." (Citations and punctuation omitted.) *Scovill Fasteners v. Sure-Snap Corp.*, 207 Ga. App. 539 (428 SE2d 435) (1993). Ruotolo Associates and CSC supported their arguments with respect to the motion to dismiss through affidavits and oral argument, and the record does not show the trial court held an evidentiary hearing.

> If the motion is decided on the basis of written submissions alone . . . disputes of fact found in the affidavits are resolved in favor of plaintiff. Further, if a motion is decided on the basis of the written submissions, the reviewing court is in an equal position with the trial court to determine the facts and therefore examines the facts under a non-deferential standard.

(Citation and footnote omitted.) *Stuart v. Peykan, Inc.*, 261 Ga. App. 46, 47 (581 SE2d 609) (2003).

So viewed, the record shows that Ruotolo Associates is a New Jersey corporation with its registered office in Cresskill, New Jersey. CSC is a Georgia corporation with its principal place of business in Augusta, Georgia. During all times relevant to the complaint, Caporale, a Massachusetts resident, was the executive vice-president and chief operating officer of Ruotolo Associates; DeMartinis, a Pennsylvania resident, was a vice-president of Ruotolo Associates; and Ruotolo, a New Jersey resident, was the president and CEO of Ruotolo Associates.

CSC provides "stewardship" campaign services to Catholic parishes. Ruotolo Associates provides fundraising services to the Catholic Church and other nonprofit organizations. In May 2001, Eric McCardle, a CSC vice-president, met with Ruotolo in Hilton Head, South Carolina, where they discussed the benefits of CSC and Ruotolo Associates working together to provide stewardship and capital campaigns to individual parishes and dioceses throughout the nation. At that meeting, CSC and Ruotolo Associates agreed to jointly present and perform a stewardship campaign for the Diocese of Washington, D.C.

CSC prepared the Washington proposal in Augusta, Georgia, and employees of CSC implemented the Washington stewardship plan from Augusta, Georgia, from June 2001, through December 2001. CSC and Ruotolo made a joint proposal to provide stewardship services to the Diocese of Brooklyn, New York, in July 2001. At Ruotolo Associates' request, CSC also prepared a stewardship proposal for the Diocese of Camden, New Jersey. The Brooklyn and

Camden proposals were also prepared in Augusta, Georgia. According to the complaint, Ruotolo, using CSC's intellectual property, secured a contract with the Diocese of Camden to the exclusion of CSC and in breach of their agreement to work together on the project.

Ruotolo Associates does not regularly solicit or conduct business in Georgia; it does not have an office, own property, maintain a bank account, or is registered to do business in Georgia. No negotiations between CSC and Ruotolo Associates were held in Georgia; the negotiations for the project to be performed for the Diocese of Camden occurred in New Jersey. Ruotolo Associates performed a fundraising project for a school in Savannah, Georgia, at the request of a competitor that did not have sufficient personnel to handle the project, but there is no evidence that the project had any connection to CSC or was part of any ongoing activity by Ruotolo Associates in Georgia. The individual defendants aver they did not travel to Georgia in connection with any projects involving CSC. Georgia based contacts between CSC and Ruotolo Associates include a number of checks sent to Ruotolo Associates from Georgia and drawn on a Georgia bank. DeMartinis made numerous electronic mail transmissions to CSC personnel which included comments on stewardship projects as they were prepared by CSC in Georgia, and his in-put was part of an ongoing working arrangement between CSC and Ruotolo Associates. Ruotolo attended a trade show in Atlanta in 1993, although the trip had no connection to CSC.

1. Georgia's "long-arm" statute provides that a Georgia court may exercise jurisdiction over a nonresident in the same manner as if he were a resident of the state if in person or through an agent, he:

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

. . .

OCGA § 9-10-91.

CSC argues that Ruotolo Associates transacted business in Georgia for purposes of OCGA § 9-10-91 (1) through its independent acts and the acts of CSC, as its agent and resident partner, and that it committed a tortious injury in Georgia through an act or omission outside the state for purposes of OCGA § 9-10-91 (3). We disagree.

> The Georgia Long-Arm Statute confers jurisdiction over nonresidents to the maximum extent permitted by due process. Due process requires that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign. Mere "random," "fortuitous," or "attenuated" contacts are insufficient. Our courts have considered the "minimum contacts" needed to confer personal jurisdiction over a nonresident. Three rules to determine the power of this state to exercise jurisdiction over a nonresident have been gleaned. The rules are: (1) The nonresident must purposefully avail himself of the privilege of doing some act or consummating some transaction with or in the forum; (2) The plaintiff must have a legal cause of action against the nonresident, which arises out of, or results from, the activity or activities of the defendant within the forum and (3) If (and only if) the requirements of Rules 1 and 2 are established, a minimum contact between the nonresident and the forum exists; the assumption of jurisdiction must be found to be consonant with the due process notions of fair play and substantial justice. In other words, the exercise of jurisdiction based upon the minimum contact must be reasonable.

(Citations and punctuation omitted.) *Yukon Partners v. Lodge Keeper Group*, 258 Ga. App. 1, 4-5 (572 SE2d 647) (2002). We conclude that Ruotolo Associates did not independently perform any acts in Georgia which would subject it to the jurisdiction of the Georgia courts. All negotiations between CSC and Ruotolo Associates took place outside Georgia, and Ruotolo Associates is not shown to have taken any actions in Georgia in connection with any project which involved CSC. Although employees of Ruotolo Associates directed telephonic and electronic mail contacts to Georgia from outside the state, this type of contact, in and of itself, has consistently been held insufficient to establish the jurisdiction of the Georgia courts over a nonresident defendant. See *Gee v. Reingold*, 259 Ga. App. 894, 896 (1) (578 SE2d

575) (2003); *Genesis Research Institute v. Roxbury Press*, 247 Ga. App. 744, 746 (542 SE2d 637) (2001); *ETS Payphone v. TK Indus.*, 236 Ga. App. 713, 715 (513 SE2d 257) (1999).

The other contacts between Ruotolo Associates and Georgia are also insufficient to establish jurisdiction. Payments sent to Ruotolo Associates in New Jersey and drawn on a Georgia bank do not show that Ruotolo Associates purposefully availed itself of the privilege of doing business in Georgia. See, e.g., *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U. S. 408, 416-417 (104 SC 1868, 80 LE2d 404) (1984) (bank on which check is drawn is normally at the discretion of the drawee and not an appropriate consideration in determining whether defendant has sufficient contacts with forum state to justify assertion of jurisdiction). Ruotolo Associates performed a project in Savannah, but because this activity had no connection with CSC's claim and was an isolated contact with the state, it is insufficient to support the jurisdiction of the Georgia court over Ruotolo Associates in this case. See *Smith v. Air Ambulance Network*, 207 Ga. App. 75, 75-76 (427 SE2d 305) (1993) (that appellee provided services in Georgia on previous occasions was irrelevant to whether cause of action arose from transaction of business in Georgia). Ruotolo's attendance at a trade show in Atlanta "cannot be said to constitute transacting business in this state without a showing that his attendance was important to the performance of the contract." *Mayacamas Corp. v. Gulfstream Aerospace Corp.*, 190 Ga. App. 892, 894 (1) (380 SE2d 303) (1989).

CSC also argues that Ruotolo Associates conducted business in Georgia through a business partnership between CSC and Ruotolo Associates. By its terms, OCGA § 9-10-91 applies to a nonresident acting in person or through an agent. CSC contends that Georgia law provides that a resident partner's actions in Georgia are ascribed to the nonresident partner, and Ruotolo Associates therefore conducted business in Georgia through its relationship with CSC. We disagree.

A threshold consideration is whether CSC and Ruotolo Associates were in a partnership, which Ruotolo Associates denies. "A partnership is an association of two or more persons to carry on as co-owners a business for profit. . . ." OCGA § 14-8-6 (a). A partnership may be created for a single venture or enterprise. See *Boatman v. George Hyman Constr. Co.*, 157 Ga. App. 120, 123 (276 SE2d 272) (1981). According to the verified complaint, CSC and Ruotolo Associates entered into a joint venture to provide services for the Diocese of Camden, New Jersey. McCardle averred that CSC and Ruotolo Associates worked on a stewardship project for the Diocese of Washington, D.C., in which they shared profits based on contribution to the project. Copies of checks and other correspondence demonstrate that CSC and Ruotolo Associates did share revenues from the Washington

project. See OCGA § 14-8-7 (4) ("receipt by a person of a share of the profits of a business is prima-facie evidence that he is a partner in the business"). The record also shows that, through electronic mail correspondence, Ruotolo Associates commented on the stewardship materials as they were prepared by CSC. In his affidavit, McCardle refers to the business relationship as a partnership. Based on the written submissions in the record, and considering that disputes of fact based on written submissions are to be resolved in favor of the plaintiff for purposes of jurisdictional analysis, see *Stuart*, 261 Ga. App. at 47, we will treat CSC and Ruotolo Associates as engaged in a partnership to produce and sell stewardship campaigns to Catholic dioceses and parishes.[1] Nevertheless, the existence of a partnership, in and of itself, is not sufficient to subject Ruotolo Associates to the jurisdiction of the Georgia courts.

CSC supports its position by reference to *Bloise v. Trust Co. Bank &c.*, 170 Ga. App. 405 (317 SE2d 249) (1984), and *Cohen v. Publishers Paper Co.*, 171 Ga. App. 87 (318 SE2d 796) (1984). In *Bloise*, a bank sought to recover from the defendant on a loan the bank made to a partnership in which the defendant was a partner. The defendant, a New York resident, claimed he was not subject to personal jurisdiction in Georgia. In affirming the trial court's denial of the nonresident defendant's motion to dismiss, we noted that the nonresident defendant had signed a partnership agreement which authorized other partners to borrow money on behalf of the partnership and to enter into a commercial banking transaction with the plaintiff bank on behalf of the partnership. 170 Ga. App. at 406 (1). We found that the other partners acted as the nonresident's agents and the nonresident therefore transacted business in Georgia for purposes of the long-arm statute. Id. at 407 (1).

CSC argues that *Bloise* stands for the principle that a nonresident may be bound by the actions of its resident partner, but we conclude that *Bloise* is not controlling here. The nonresident partner in *Bloise* specifically authorized other partners to act on his behalf in the context of the transaction which was sued upon. Unlike *Bloise*, Ruotolo Associates did not authorize CSC to act as its agent with regard to a Georgia-based transaction. CSC shows that the partnership conducted Georgia-based activities through CSC's preparation

---

[1] An argument could be made that CSC and Ruotolo Associates were engaged in a joint venture that was not a partnership. The distinction between joint ventures that are partnerships and joint ventures that are not partnerships is discussed in *Accolades Apts. v. Fulton County*, 274 Ga. 28, 29 (549 SE2d 348) (2001). However, the jurisdictional analysis here would be the same in either case.

of the campaign materials in Georgia with Ruotolo Associates' knowledge. However, according to McCardle, Ruotolo Associates' involvement with the project in Georgia was limited to "monitoring." Based on this limited involvement with CSC's Georgia-based activities, we cannot say that Ruotolo Associates has "purposefully avail[ed] [itself] of the privilege of doing some act or consummating some transaction with or in the forum." *Yukon Partners*, 258 Ga. App. at 4-5. CSC cannot bootstrap its own actions into the basis for subjecting Ruotolo Associates to personal jurisdiction of the Georgia courts; rather, it is Ruotolo Associates' actions that must form the basis of jurisdiction. "[T]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact between that defendant and the forum itself." *Shellenberger v. Tanner*, 138 Ga. App. 399, 403 (227 SE2d 266) (1976). "The application of [the minimum contacts] rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (Citation, punctuation and footnote omitted.) *Stuart*, 261 Ga. App. at 49 (1).

*Cohen*, which CSC also relies upon, is a Georgia case decided under Oregon law, but CSC contends that *Cohen* is persuasive inasmuch as Oregon's long arm statute is similar to Georgia's and the decision also involves a federal due process analysis. In *Cohen*, the plaintiff obtained a default judgment in Oregon in its breach of contract action against Jeffrey Cohen and David Cohen, d/b/a Cohen Brothers Export Lumber Specialists. The plaintiff then filed an action in Chatham County to domesticate the Oregon judgment in Georgia. The trial court granted summary judgment to the plaintiff and Jeffrey Cohen appealed, contending that the Oregon court lacked personal jurisdiction over him. We applied Oregon law and affirmed. The underlying facts showed that the Cohen Brothers partnership, in which Jeffrey Cohen was a partner, had placed an order for lumber in Oregon, and David Cohen traveled to Oregon to discuss the order on behalf of the partnership. 171 Ga. App. at 90. We concluded that Oregon's exercise of jurisdiction over Jeffrey Cohen did not offend traditional notions of fair play and substantial justice, and relied on *Bloise* for the principle that Jeffrey Cohen's partner David Cohen acted as his agent. Id.

But we are also unpersuaded by *Cohen*. The partnership there conducted business in Oregon and was sued in connection with the Oregon transaction. Here, CSC and Ruotolo Associates' business venture involved the sale of stewardship projects outside the State of Georgia, and negotiations between CSC and Ruotolo Associates with regard to the business took place outside Georgia. Even though a

partner may act as the agent of another partner, we can find no support in *Bloise* or *Cohen* for the proposition that CSC's actions in Georgia may be attributed to Ruotolo Associates for purposes of establishing jurisdiction of the Georgia courts in this matter.

We also conclude that Ruotolo Associates is not subject to suit in Georgia for CSC's tort claims under authority of OCGA § 9-10-91 (3), as argued by CSC. In order for this subsection to apply, the defendant must regularly do or solicit business or engage in any other persistent course of conduct in the state, or derive substantial revenue from goods used or consumed or services rendered in Georgia. See *Worthy v. Eller*, 265 Ga. App. 487, 488 (594 SE2d 699) (2004). The evidence shows that Ruotolo Associates did not engage in a persistent course of conduct in Georgia or derive substantial revenues from goods used or services rendered in Georgia, including the stewardship campaign materials and associated services which involved CSC, which were consumed by clients outside Georgia. Accordingly, Ruotolo Associates has "done none of the acts set forth in OCGA § 9-10-91 which must be done . . . to subject [it] to personal jurisdiction of a Georgia court" for purposes of CSC's tort claims. *ETS Payphone*, 236 Ga. App. at 715.

2. We also find that the trial court correctly dismissed CSC's claims against the individual defendants, Caporale, DeMartinis, and Ruotolo. CSC does not address the issue of the Georgia courts' personal jurisdiction over these defendants in its appellate brief, and so we need not consider it. See *Tuten v. State*, 242 Ga. App. 223 (529 SE2d 221) (2000) (appellant abandoned enumeration of error by failing to address it in his appellate brief). Furthermore, the evidence shows no more than attenuated contacts between Georgia and these nonresident defendants.

*Judgment affirmed. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 14, 2004 —
RECONSIDERATION DENIED DECEMBER 6, 2004 — 

*Victor Hawk*, for appellant.
*Fulcher, Hagler, Reed, Hanks & Harper, Barry A. Fleming, Matthew D. DeMott*, for appellees.