## A93A2382. PLEATS, INC. v. OMSA, INC.
(440 SE2d 214)

BIRDSONG, Presiding Judge.

Pleats, Inc. appeals the order of the state court granting appellee OMSA, Inc.'s motion to dismiss or in the alternative motion for summary judgment, and from the order granting appellee's motion to open default and denying appellant's motion for default judgment. Pleats, a Georgia corporation with its principal place of business in Georgia, brought suit for breach of contract in state court against OMSA, Inc., on February 12, 1992; OMSA conducts business in Texas and maintains no Georgia office or sales staff; on March 12, 1992, OMSA was served in El Paso, Texas, with process, including a duplicate original complaint. Date of service of summons was not entered upon the process. Affidavit of service was sworn to on March 23, 1992. On Wednesday, April 15, 1992, OMSA answered and sought removal of the case to the U. S. District Court; costs were not tendered with the answer. The answer contained certain general denials and averred five specific claims of defense, including lack of jurisdiction, improper venue, insufficiency of service of process, and absence of privity of contract between the parties. On April 30, 1992, Pleats moved to remand the action to state court because the removal petition was filed more than 30 days after service. OMSA agreed to remand and a consent order was filed on May 18, 1992, in federal court remanding the suit. In Fulton County State Court, appellant filed a motion for default judgment; the trial court denied appellant's motion and allowed appellee to open default. Subsequently, appellee moved to compel discovery and to extend the discovery period. Appellant responded by filing a motion to vacate the order opening default and to enter judgment against OMSA. Appellee's motions were granted and appellant's motions were denied. *Held*:

1. The trial court did not err in opening default and denying the motion for default judgment. The vice-president of OMSA filed an affidavit stating he had mistakenly believed process had been served upon him on March 17, 1992, he had been given no sheriff's entry of service or other form bearing actual date of service, and he had reported to his attorney that service of process was on March 17. It was also stated therein that OMSA has valid defenses to appellant's claims. Those defenses were listed. OMSA's attorney filed an affidavit confirming the vice-president had reported that process was served on March 17, 1992. In this affidavit, it was stated that an associate had

been sent to state court to check the docket and confirm date of service, but that the sheriff's entry of service was not on file with the court clerk and, in fact, was not so filed until June 4, 1992, more than 45 days from the original date of service. Acting on the information supplied by his client, OMSA's attorney filed a notice of remand, a petition for remand, and an answer, believing each to have been filed within 30 days of service of process. OMSA's attorney also claimed that had he known the case was then in default, a check for costs would have been tendered with the answer; it was only upon notification by Pleats' attorney through a motion for remand to state court that OMSA's attorney discovered service had been perfected on March 12, 1992, and that he believes the defenses asserted in the vice-president's affidavit are viable, that OMSA is ready to plead instanter, and that OMSA is ready to proceed to trial. Under oath, Pleats has claimed no specific prejudice by virtue of default opening.

OCGA § 9-11-55 (b) allows a prejudgment default to be opened upon payment of costs, in the trial court's discretion, on one of three grounds if four conditions are met. See generally *Muscogee Realty &c. Corp. v. Jefferson Co.*, 252 Ga. 400, 401 (314 SE2d 199). Regarding appellee's claim of mistake of fact as to service date, generally, in cases concerning default judgments this court will not substitute its judgment for that of the trial judge who had the opportunity to determine witness credibility and/or to weigh the evidence before it. See *Coleman v. Superior Ins. Co.*, 204 Ga. App. 78, 79 (418 SE2d 390). Moreover, excusable neglect and proper cause cannot be determined by fixed rules, but rather must be decided based on the operative circumstances in each particular case. See *Miller v. Tranakos*, 198 Ga. App. 668, 670 (1) (402 SE2d 772); *Jim Walter Homes v. Roberts,* 196 Ga. App. 618, 621 (4) (396 SE2d 787). This determination will not be reversed by an appellate court absent a manifest abuse of discretion. *Sagnibene v. Budget Rent-A-Car Systems*, 209 Ga. App. 44, 46 (432 SE2d 639). " 'The rule permitting opening of default is remedial in nature and should be liberally applied, for default judgment . . . should be invoked only in extreme situations. Whenever possible cases should be decided on their merits for default judgment is not favored in law. Generally, a default should be set aside where the defendant acts with reasonable promptness and alleges a meritorious defense.' " (Citation omitted.) Id. Appellant has failed to establish that appellee did not act with reasonable promptness after receiving default notice; appellant likewise has failed to show that it sustained unique harm or suffered specific prejudice from the opening of default. While we will carefully scrutinize claims of mistake as to the date of service of process, examining the circumstances of this case, we find no manifest abuse of discretion in opening default or in denying appellant's request for default judgment. Compare *Sagnibene*,

supra, with *West v. Smith*, 196 Ga. App. 69 (395 SE2d 302) where no issue was raised that responsive pleadings were filed a day late until it was too late for the default to be opened as a matter of right.

2. Appellant, citing *Stout v. Signate Holding*, 184 Ga. App. 154 (361 SE2d 36), asserts appellee waived the defense of personal jurisdiction by being in default. Appellee counters that appellant did not timely raise this issue before the trial court; the record supports appellee's contention. Appellant has failed to preserve this issue on appeal by failing to raise it timely before the trial court. *Nodvin v. West*, 197 Ga. App. 92, 95 (3a) (397 SE2d 581); *Dept. of Transp. v. Hillside Motors*, 192 Ga. App. 637 (1) (385 SE2d 746).

3. After opening default, the trial court granted the motion to dismiss "on the grounds that [it] lacks jurisdiction over the person of [appellee] as contemplated by OCGA § 9-11-12 (b) (2) and that venue is improper as to [appellee] as contemplated by OCGA § 9-11-12 (b) (3) for the reason that the minimum contact requirements of OCGA § 9-10-90 et seq. have not been met." The trial court concluded that appellee's alternative motion for summary judgment had been rendered moot.

(a) The facts in this case, as reported in the affidavits and depositions of record, are in dispute. " 'Our precedents establish that a defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving lack of jurisdiction. [Cits.] A motion to dismiss for lack of personal jurisdiction must be granted if there are insufficient facts to support a reasonable inference that defendant can be subjected to the jurisdiction of the court. To demonstrate that the court lacks jurisdiction, defendant may raise matters not contained in the pleadings. However, when the outcome of the motion depends on unstipulated facts, it must be accompanied by supporting affidavits or citations to evidentiary material in the record. [Cits.] Further, to the extent that defendant's evidence controverts the allegations of the complaint, plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence. [Cit.]

" 'The trial court considering a motion to dismiss for lack of jurisdiction has discretion to hear oral testimony or to decide the motion on the basis of affidavits and documentary evidence alone pursuant to OCGA § 9-11-43 (b). [Cit.] If the motion is decided on the basis of written submissions alone, as was the motion in this case, disputes of fact found in the affidavits are resolved in favor of plaintiff. [Cit.] Further, if a motion is decided on the basis of the written submissions, the reviewing court is in an equal position with the trial court to determine the facts and therefore examines the facts under a non-deferential standard. [Cits.]' " *Scovill Fasteners v. Sure-Snap Corp.*, 207 Ga. App. 539, 540 (428 SE2d 435). But compare *Harvey v. Harvey*, 147 Ga. App. 154 (1) (248 SE2d 214) involving a denial of a

motion to quash service for lack of personal jurisdiction and employing a "some evidence" standard.

(b) "Georgia's Long Arm Statute states that the courts of this State may exercise personal jurisdiction over any nonresident as if he were a resident of the State, if in person or through an agent he . . . [t]ransacts any business within this State. Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, the defendant must have purposefully directed his activities at residents of the forum, and the litigation must result from alleged injuries that arise out of or relate to those activities. The constitutional touchstone is whether the defendant purposefully established minimum contacts in the forum State, that is, whether the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. Mere telephone or mail contact with an out-of-state defendant is insufficient to establish the purposeful activity with Georgia required by the Long Arm statute. Also, an individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts. Prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing must be evaluated in determining whether the defendant has purposefully established minimum contacts within the forum." (Citations and punctuation omitted.) *Garrett Assoc. v. Mediplex Group*, 209 Ga. App. 738, 739 (434 SE2d 568).

Pleats' president went to Mexico to arrange for the manufacture and shipment of pants by a man named Romano whose factory previously had accomplished work for Pleats. However, at the time, Romano was manufacturing some clothing for a company named Promotora; rather than interrupt this venture, Cohen, the president of Promotora, offered to have the goods cut by a company called OMSA in Texas and thereafter assembled in Mexico. (Certain tariff charges apparently are avoided by this procedure.) Appellant claims Cohen held himself out as the president of OMSA, or represented that he was an agent of OMSA, and did not reveal his relationship to Promotora; OMSA and Cohen denied all these claims under oath. " 'The bare assertion or denial of the existence of an agency relationship is a statement of fact when made by one of the purported parties to the relationship; but when made by an outsider, bare assertions or denials are merely conclusions of law.' " (Citation omitted.) *Stone v. First Nat. Bank of Atlanta*, 159 Ga. App. 812, 814 (4) (285 SE2d 207).

In Mexico certain contract negotiations took place. Pleats' president concedes in his deposition that, at that meeting, Mr. Cohen supplied the price at which OMSA would manufacture the pants; he offered that OMSA would accept piece goods from Pleats (Pleats' piece

goods were physically located in Texas at this time), manufacture the pants according to Pleats' specifications sent from Georgia, and return the finished goods to Georgia at a location selected by Pleats. Although Pleats claims further negotiations and acceptance of the contract occurred during telephone calls made by its president in Georgia to OMSA or its agents in Texas, it concedes the essential terms of the written contract were that Pleats would supply the piece goods (fabric) and pocketing, OMSA would cut and sew the garment to Pleats' specifications for $5.90 per pair, and that OMSA agreed the finished goods would be shipped back to Georgia to Pleats for delivery to its customers. The only reasonable inference which can be drawn from the existing record is that the essential elements of the contract substantially were negotiated in Mexico. This case is factually distinguishable from *Davis Metals v. Allen*, 230 Ga. 623 (198 SE2d 285) and *Garrett Assoc. v. Mediplex Group*, supra. Although not directly in point, we find the precedent of *Mayacamas Corp. v. Gulfstream &c. Corp.*, 190 Ga. App. 892 (380 SE2d 303) more persuasive and here controlling. As in *Mayacamas* at 894, "[t]here was no subsequent course of dealing established between the parties as a result of the contract, nor did the future consequences of the contract come to fruition." Further, the fact that officers of OMSA may have attended a bobbin show in Georgia "was fortuitous, and cannot be said to constitute transacting business in this state without a showing that [such] attendance was important to the performance of the contract." Id. The trial court did not err as enumerated.

*Judgment affirmed. Pope, C. J., and Andrews, J., concur.*

DECIDED DECEMBER 3, 1993 —
RECONSIDERATION DISMISSED JANUARY 12, 1994.

*Herbert P. Schlanger*, for appellant.
*Crim & Bassler, Harry W. Bassler, Thomas S. Bechtel*, for appellee.