**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN , JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 29, 2013**

# In the Court of Appeals of Georgia

A12A1919. TOMSIC v. MARRIOTT INTERNATIONAL, INC. et al.

McFADDEN, Judge.

Susan J. Tomsic brought an action against Marriott International, Inc. and Marriott's former employee, Broderick Sumner, alleging that Sumner physically and sexually assaulted her while giving her a massage at a hotel managed and operated by Marriott. Pertinently, her complaint alleged that Marriott was liable for negligent hiring and retention, premises liability, and failure to warn. (Tomsic's claims against Sumner are not at issue in this appeal. Likewise, although Tomsic alleged in her complaint that Sumner's acts of battery against her were within the scope of his employment by Marriott, she has not argued on appeal that Marriott should be held liable for those acts under a theory of respondeat superior, and we deem abandoned

any claims of error regarding her count alleging battery.) Marriott did not file a timely answer, but the trial court opened the default. The trial court dismissed the failure to warn count and the case proceeded to a jury trial on the remaining counts, including the premises liability count. After the close of evidence, the trial court granted directed verdicts to Marriott on the remaining counts against it. Tomsic appeals.

As detailed below, we find that the trial court was authorized to open the default, because Marriott met the conditions precedent for opening default and presented evidence authorizing the trial court to find a proper case for opening default. We find that the directed verdicts were proper because neither the evidence at trial nor evidence that Tomsic argues was erroneously excluded demonstrated the required element of causation. Finally, we find that the trial court did not err in dismissing the failure to warn count because the relief sought in that count was encompassed within the premises liability claim that proceeded to trial. Accordingly, we affirm.

1. *Facts and proceedings below.*

On August 31, 2004, Tomsic was attending a professional conference at an Atlanta-area hotel managed and operated by Marriott. She scheduled a massage at the hotel spa. She contends that she began to feel unusually relaxed during the massage,

2

that she became unable to move and barely able to speak, and that the massage therapist, Sumner, then placed his hands around her neck in a threatening manner, bruised her body in several places, touched her breasts and genitals, forced her to touch his naked testicles, and ejaculated into her mouth.

Tomsic originally filed an action against Marriott and Sumner to which Marriott filed a timely answer and a motion for summary judgment. Tomsic later dismissed that action and filed a renewal action. Marriott answered the second action late. Marriott then filed a summary judgment motion and brief that relied on materials that had been filed in the original action, including affidavits setting forth facts in support of its position that it was entitled to summary judgment. The following month, Tomsic moved for default judgment. Marriott moved to open default, and the trial court granted the motion. Subsequently, the trial court granted Marriott's motion under OCGA § 9-11-12 (b) (6) to dismiss the failure to warn count.

The action proceeded to trial on Tomsic's remaining claims against both Marriott and Sumner, and at the close of Tomsic's case-in-chief, Marriott moved for directed verdict on the claims against it. The trial court initially denied that motion, but it reconsidered during the charge conference after the close of evidence and granted directed verdicts to Marriott on both claims. (This divested the trial court of

3

venue in the action against Sumner, see OCGA § 9-10-31 (d), and consequently the jury did not consider the case against him. ) The trial court subsequently entered an order granting the directed verdicts to Marriott and stated that the order was a final judgment in the case.

2. *Opening the default.*

Tomsic argues that the trial court erred in opening the default. We disagree.

The case went into default when Marriott filed its untimely answer and failed to pay costs to open the default as a matter of right. See OCGA § 9-11-55 (a). However,

> OCGA § 9-11-55 (b) allows a default to be opened on one of three grounds: providential cause, excusable neglect, or a proper case. As a condition precedent to the trial court's consideration of whether any of the three grounds has been met, the defendant must show compliance with four statutory conditions by (1) making a showing under oath, (2) setting up a meritorious defense, (3) offering to plead instanter, and (4) announcing ready to proceed with trial.

(Citations omitted). *Strader v. Palladian Enterprises*, 312 Ga. App. 646, 648 (719 SE2d 541) (2011). Our function in "reviewing a trial court's grant of a motion to open default is to determine whether all the conditions set forth in OCGA § 9-11-55 have been met and, if so, whether the trial court abused its discretion based on the facts

4

peculiar to each case." *Majestic Homes v. Sierra Dev. Corp.*, 211 Ga. App. 223, 224 (1) (438 SE2d 686) (1993).

In support of its motion to open default, Marriott submitted the affidavit of an in-house paralegal, who testified that she mistakenly informed Marriott's outside counsel that Tomsic had served her renewal action on Marriott on April 25 when in fact it had been served on April 17. She stated that she made this mistake because she "misread the notice of the suit and service date as the date that it was received from the registered agent and sent to the claims department for Marriott." She did not realize her error until Tomsic filed her motion for default.

Marriott also submitted the affidavit of its assistant secretary who, having reviewed the complaint and Marriott's answer and motion for summary judgment, declared that "[t]he [a]nswer as pled sets forth a meritorious defense to [Tomsic's] allegations and is now made under oath by this [a]ffidavit." But his testimony was founded on information or belief: "the affirmative defenses and factual statements including admissions or denials of fact contained [in those documents] are true and correct to the best of [my] knowledge."

The assistant secretary also testified that Marriott was ready to plead instanter and was ready to proceed to trial.

In an unnotarized statement, Marriott's outside counsel described obtaining the incorrect date of service from Marriott's paralegal and not learning that Marriott was in default until he received Tomsic's motion for default judgment. He stated that, had he known of the default when he filed the late answer, he would have tendered costs to the clerk to open the default as a matter of right. He also stated that he had taken and reviewed testimony of various witnesses and that the brief supporting Marriott's summary judgment motion established its legal defenses, including "the fact that Marriott did not have any prior knowledge of incidents sufficiently similar to the incident in question to put it on notice of a potential hazard about which it should warn or somehow protect [Tomsic]."

Marriott's motion to open default also cited to the evidence filed in support of its summary judgment motion in the original action.

a. *Conditions precedent.*

Tomsic claims that Marriott did not meet the condition precedent of showing, under oath, that it had a meritorious defense. To meet this condition, a defendant must set forth facts that show the existence of the essential elements of its defense. *Lucas v. Integrated Health Svcs.*, 268 Ga. App. 306, 310 (2) (601 SE2d 701) (2004). Although these facts need not be set forth in great detail, the trial court "must . . .

6

have sufficient facts before it to determine if a meritorious defense is factually raised so that the judge can exercise discretion." (Citation omitted.) *Lucas*, 268 Ga. App. at 310 (2).

We agree with Tomsic that the affidavits of Marriott's paralegal and assistant secretary did not establish a meritorious defense. The paralegal's affidavit did not address that issue at all. The assistant secretary's affidavit also contained no facts pertaining to Marriott's defense. Although the assistant secretary sought to verify Marriott's previously-filed answer by stating that he incorporated under oath the answer's contents, cf. *Strader*, 312 Ga. App. at 646 (allowing party to point to facts in verified answer to set forth meritorious defense in support of motion to open default), the assistant secretary qualified this statement as based on his "information or belief . . . to the best of [his] knowledge." Such language alone did not satisfy the requirement that an affidavit or verification be made with personal knowledge, and the contents of the affidavit did not otherwise reflect that the assistant secretary had personal knowledge about facts establishing Marriott's meritorious defense. Compare *C. Brown Trucking Co. v. Henderson*, 305 Ga. App. 873, 875 (1) (700 SE2d 882) (2010) with *Hansen v. Mt. Yonah Scenic Estates Club*, 227 Ga. App. 258, 259 (488 SE2d 732) (1997).

We also agree with Tomsic that the unnotarized statement of its outside counsel did not satisfy the condition that the meritorious defense be set forth under oath. Because that document was not notarized, it was not a valid affidavit. *Fredrick v. Hinkle*, 297 Ga. App. 101, 103 (1) (676 SE2d 415) (2009). See generally *Harris v. Murray*, 233 Ga. App. 661, 664 (3) (504 SE2d 736) (1998) ("In order to make an affidavit, there must be present the officer, the affiant, and the paper, and there must be something done which amounts to the administration of an oath.") (citation and punctuation omitted). The trial court erred in finding that this statement satisfied Marriott's obligation to demonstrate a meritorious defense.

Nevertheless, we find that Marriott did establish its meritorious defense under oath, satisfying that condition precedent for opening default. When Marriott moved to open the default, it had already filed its summary judgment motion citing to sworn testimony, including the affidavit testimony of a Marriott employee and the deposition testimony of Marriott's 30 (b) (6) witness, that it argued entitled it to judgment as a matter of law. These sworn statements contained specific facts showing that, if relief from default was granted, the outcome of the suit might be different from the result if the default stood, which is the definition of "meritorious defense" in this context. See *Exxon Corp. v. Thomason*, 269 Ga. 761 (1) (504 SE2d 676)

8

(1998). Marriott referenced these summary judgment materials in support of its motion to open the default.

"The rule permitting opening of default is remedial in nature and should be liberally applied, for default judgment is a drastic sanction that should be invoked only in extreme situations." (Citation and punctuation omitted.) *Ford v. St. Francis Hosp.*, 227 Ga. App. 823, 826 (1) (490 SE2d 415) (1997). Under these unusual circumstances, where at the time of its motion to open default Marriott already had submitted to the trial court sworn witness testimony containing facts establishing its meritorious defense, it would make no sense to impose the drastic sanction of default on the basis that the documents establishing that meritorious defense were originally filed for a different purpose.

b. *Finding of a proper case for opening default.*

The trial court determined that Marriott had established a proper case allowing the court to open the default under OCGA § 9-11-55 (b). In making this determination, the trial court pointed to evidence that Marriott's outside counsel received incorrect information about the service date from Marriott's paralegal, who had misread that date, and that at the relevant time no return of service had been filed with the court. See OCGA § 9-11-4 (h).

9

In *Pleats, Inc. v. OSMA*, 211 Ga. App. 643, 643-644 (1) (440 SE2d 214) (1993), which presented similar circumstances to those here, we affirmed the trial court's opening of default. We held:

> Regarding appellee's claim of mistake as to fact as to service date, generally in cases concerning default judgments this court will not substitute its judgment for that of the trial judge who had the opportunity to determine witness credibility and/or to weigh the evidence before it. Moreover, excusable neglect and proper cause cannot be determined by fixed rules, but rather must be decided based on the operative circumstances in each particular case. This determination will not be reversed by an appellate court absent a manifest abuse of discretion.

(Citations omitted.) Id. at 644 (1). Citing Georgia's policy disfavoring default, we further held that, "[g]enerally, a default should be set aside where the defendant acts with reasonable promptness and alleges a meritorious defense." (Citation omitted.) Id. Noting that the appellant "failed to establish that appellee did not act with reasonable promptness after receiving default notice" and "failed to show that it sustained unique harm or suffered specific prejudice from the opening of the default," we found no manifest abuse of discretion in the trial court's decision to open default in *Pleats*. Id. See also *Henderson v. Quadramed Corp.*, 260 Ga. App. 680, 682 (2) (580 SE2d 542) (2003) (trial court did not abuse discretion in opening default where

10

answer was untimely because employee to whom registered agent sent complaint had left defendant company and letter had remained unopened for five weeks); *Kaylor v. Atwell*, 251 Ga. App. 270, 272 (1) (553 SE2d 868) (2001) (trial court did not abuse discretion in opening default where answer was untimely due to defendant's mathematical miscalculation).

Here, as in *Pleats*, Marriott provided its outside counsel with an incorrect service date, Tomsic failed to timely file a return of service with the trial court, Marriott filed an answer that it believed at the time to be timely, Marriott promptly sought to open default upon learning of the mistake, and there is no indication that Tomsic sustained unique harm or specific prejudice from opening the default. Considering the remedial nature of the rule permitting the opening of a default and Georgia's policy of liberally applying that rule to permit cases to be determined on their merits, we find that the trial court did not abuse its discretion in opening the default. See *Pleats,* 211 Ga. App. at 643-644 (1).

3. *Directed verdicts.*

Tomsic argues that the trial court erred in granting directed verdicts to Marriott on her claims for premises liability and negligent hiring and retention. A directed verdict is authorized "[i]f there is no conflict in the evidence as to any material issue

11

and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." OCGA § 9-11-50 (a). "But where any evidence or some evidence exists to support a jury issue on the non-movant's claims, a directed verdict is improper. This Court conducts a de novo review on appeal from the grant of a directed verdict, and we will uphold a directed verdict only if all of the evidence demands it." (Citations and punctuation omitted.) *Sun Nurseries v. Lake Erma*, 316 Ga. App. 832, 835 (730 SE2d 556) (2012). As detailed below, even considering evidence that Tomsic argues the trial court erroneously excluded from trial, we find that the evidence demanded directed verdicts on the negligent hiring and retention claim and on the premises liability claim.

a. *Negligent hiring and retention.*

"[A]n employer may be liable for hiring or retaining an employee the employer knows or in the course of ordinary care should have known was not suited for the particular employment." (Citations and footnote omitted.) *Munroe v. Universal Health Sys.*, 277 Ga. 861, 862 (1) (596 SE2d 604) (2004). See OCGA § 34-7-20. "However, absent a causal connection between the employee's particular incompetency for the job and the injury sustained by the plaintiff, the defendant employer is not liable to the plaintiff for hiring an employee with that particular

12

incompetency." (Citation omitted.) *Munroe*, 277 Ga. at 862-863 (1). Our Supreme Court has rejected a "'but for' argument that [an employer] is liable for the negligent hiring or retention of [an employee] solely because his employment by [the employer] provided [the employee] with the access or opportunity to injure [the plaintiff]." Id. There must be "sufficient evidence to establish that the employer reasonably knew or should have known of an employee's 'tendencies' to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." (Citation omitted.) Id. at 863 (1). See also *Kelley v. Baker Protective Svcs.*, 198 Ga. App. 378, 379 (401 SE2d 585) (1991) ("For [an employer] to be negligent in hiring and retaining any employee with violent and criminal propensities, it would be necessary that [the employer] knew or should have known of those dangerous propensities alleged to have resulted in [the plaintiff's injury].") (citations and punctuation omitted.)

The evidence, viewed most favorably to Tomsic, showed that she incurred injuries when, during her massage, Sumner bruised her, threatened her, and sexually assaulted her. Tomsic also introduced expert evidence that her experience of feeling unusually relaxed and being unable to move or speak was consistent with the transdermal administration of certain types of drugs. But Tomsic did not introduce evidence to show that Marriott knew or reasonably should have known that Sumner

13

had a tendency to engage in behavior relevant to Tomsic's injuries. Marriott had no record of any other complaints against Sumner while he was working at the hotel, and, as explained below, the evidence does not support Tomsic's claims that her injuries were caused by Marriott's failure to adequately investigate Sumner's criminal record, employment history, or credentials.

i. *Criminal record.*

The evidence showed that, before hiring Sumner, Marriott checked to see if he had any felony convictions and found none. Marriott did not, however, check for misdemeanor convictions (except in one county, which Marriott's human resources director said was done by mistake), nor did it search for police incident reports on Sumner. Marriott's human resources director testified that Marriott did not look for misdemeanor convictions in the hiring process because the number of different types of misdemeanors in Georgia and their "varying levels and degrees" rendered information about misdemeanor convictions of limited relevance to hiring decisions. Indeed, an investigator for Tomsic testified that incident reports could be obtained only by contacting directly, by telephone or in person, each county or municipality that held the reports; he further testified that his effort to obtain reports from one such jurisdiction (Cobb County) took several hours.

14

Tomsic points to evidence that, had Marriott performed these additional searches, it could have discovered that Sumner previously had pled guilty to the misdemeanor of public drunkenness in violation of OCGA § 16-11-41 (a), and that Cobb County had on file a 1994 incident report related to a suicide attempt by Sumner, a 2000 incident report related to an accusation of simple assault made by Sumner's former girlfriend, and a 2002 incident report for a domestic dispute involving the former girlfriend.

For purposes of our analysis we do not need to consider whether or not it would have been reasonable for Marriott to incur the time and expense of searching for misdemeanor convictions and police incident reports on its massage therapists applicants, although we strongly question whether such steps would have been reasonable in this case. But even if Tomsic presented a fact question on this point, the information that Tomsic argues these measures would have uncovered about Sumner does not demonstrate that he had "'tendencies' or propensities that [he] could cause the type of harm sustained by [Tomsic]." *Munroe*, 277 Ga. at 863 (1). Sumner's misdemeanor conviction for public drunkenness and his suicide attempt did not demonstrate that he had a propensity to inflict personal harm upon a massage client. See *Worstell Parking v. Aisida*, 212 Ga. App. 605, 606-607 (2) (442 SE2d 469)

15

(1994) (although employee indicated on application that he had been arrested, and record showed that he had been convicted of several controlled substances offenses, record was devoid of any evidence that he had any propensity toward violence or that employer knew of that propensity). The 2002 "domestic dispute" incident report reflects only that Sumner's former girlfriend asked an officer to stand by while Sumner moved some items out of their house. This report, which Tomsic contends Marriott should have discovered, contains no facts indicating that Sumner had a propensity to harm another. See *Munroe*, 277 Ga. at 866 (2).

The 2000 "simple assault" incident report presents a separate issue. It describes a physical attack by Sumner on his former girlfriend. The girlfriend reported to the police that, a few days earlier, Sumner had grown angry when she confronted him about driving while intoxicated. The girlfriend stated that Sumner had grabbed and twisted her arms, had grabbed the back of her head and dragged her across a room, had held her by the throat and thrown her against a wall, had thrown her on a bed and begun to choke her, had pulled the telephone out of the wall, and punched two holes in the wall. The girlfriend also stated that this was the "first time in the nine years she [had] known him that he [had] become violent." The incident report does not reflect

16

that the girlfriend pressed charges, that Sumner was arrested, or any police investigation into or other follow-up of this incident.

While the 2000 incident report shows that Sumner had been accused of acts of domestic violence, it does not indicate that he had tendencies to engage in behavior relevant to the injuries that Tomsic incurred. The incident report depicts Sumner physically assaulting a domestic partner in an unprecedented, intoxicated rage, while Tomsic describes Sumner taking advantage of the circumstances of a massage in a calculated and premeditated fashion to sexually assault and bruise a client, employing a drug of some sort to facilitate the assault. Although both episodes involve an element of violence, they are dramatically distinct in most other respects. The accusations against Sumner contained in the 2000 incident report do not "involve conduct showing that [Sumner] had a tendency to engage in the type of tortious conduct which [Tomsic] claims caused [her] injury." (Citation omitted.) *Poole v. N. Georgia Conference of the Methodist Church*, 273 Ga. App. 536, 540 (615 SE2d 604) (2005). See also *Drury v. Harris Ventures*, 302 Ga. App. 545, 548 (2) (691 SE2d 356) (2010) (relevant question is whether employer knew or should have known that employee hired and retained to perform specific duties involving personal contact

17

with plaintiff was unsuitable for that position because he posed a reasonably foreseeable risk of personal harm to persons in plaintiff's position).

ii. *Employment history and credentials.*

Tomsic also argues that Marriott did not adequately investigate Sumner's employment history. The evidence, viewed most favorably to Tomsic, showed that Sumner had attended massage school and was certified to give massages. His application for a Cobb County business license was still pending when he first began to give massages in his employment with Marriott, but he did have his business license when he gave the massage to Tomsic. The evidence also showed that, on his employment application with Marriott, Sumner misrepresented the extent of his experience giving massages. Finally, there was evidence that Sumner told a former girlfriend that, while he was working at another spa, a client had wrongfully accused him of touching her inappropriately during a massage.

The fact that Marriott allowed Sumner to give massages before he obtained his business license is irrelevant to whether it knew or should have known that Sumner had any propensities to inflict harm. Likewise, the fact that he overstated his massage experience on his application does not show that Marriott knew or should have known of any such propensities. See *Drury*, 302 Ga. App. at 548-549 (2) (employer

18

did not know, nor reasonably should have known, of employee's mental illness or tendency toward violence if untreated, where employee concealed his diagnosis and treatment to obtain employment); *Poole*, 273 Ga. App. at 539 (even if employer had learned that pastor was inadequately trained as a counselor and has misused his position at prior churches to take advantage of parishioners and counseled persons, as a matter of law this information would not have placed employer on notice that it was reasonably foreseeable from pastor's tendencies that he would enter into affair with parishioner and lie about it to parishioner's husband during marriage counseling).

Regarding the alleged incident at the other spa, Tomsic offered no evidence that Marriott had any means of obtaining this information from the other spa or that Sumner's employment file with the other spa even contained this information. The other spa later rehired Sumner.

In summary, there is no evidence that Marriott disregarded indications of a propensity in Sumner to engage in behavior relevant to the injuries sustained by Tomsic. Consequently, no fact question remained as to whether Marriott breached its "duty to exercise ordinary care to avoid hiring [or retaining] an employee who posed

19

a reasonable foreseeable risk of inflicting personal harm on others." *Munroe*, 277 Ga. at 866 (2). The trial court properly granted the directed verdict on this claim.

b. *Premises liability.*

"OCGA § 51-3-1 requires an occupier of land to exercise ordinary care in keeping the premises safe for invitees. This duty extends to protecting invitees from foreseeable criminal attacks by third parties." (Citations omitted.) *Westmoreland v. Williams*, 292 Ga. App. 359, 361 (665 SE2d 30) (2008). As the operator and manager of the hotel, Marriott is subject to this Code section. Id. at 361 (1). And, because his alleged actions against Tomsic were outside the scope of his employment, Sumner is considered a third party for the purposes of premises liability for forseeable criminal attacks. See *Dowdell v. The Krystal Co.*, 291 Ga. App. 469, 472 (2) (662 SE2d 150) (2008).

If a business proprietor "has reason to anticipate a criminal act, he or she then has a duty to exercise ordinary care to guard against injury from dangerous characters." (Citation and punctuation omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491, 492 (1) (405 SE2d 474) (1991). "Accordingly, the incident causing the injury must be substantially similar in type to . . . previous criminal activities occurring on or near the premises so that a reasonable person would take ordinary precautions to protect

20

his or her customers . . . against the risk posed by that type of activity." (Citation omitted.) *Sturbridge Partners v. Walker*, 267 Ga. 785, 786 (482 SE2d 339) (1997). At trial, Tomsic unsuccessfully sought to admit deposition testimony from a witness that she had informed Marriott that a male massage therapist had touched her nipples during a massage at the hotel spa. We agree with Tomsic that the trial court should have allowed this evidence, which showed that Marriott had been made aware that its hiring procedures had not screened out a massage therapist who inappropriately touched a client. See *Walker v. Aderhold Props.*, 303 Ga. App. 710, 712 (1) (694 SE2d 119) (2010) ("All that is required [to establish a duty] is that the prior incident be sufficient to attract the landlord's attention to the dangerous condition which resulted in the litigated incident.") (citation omitted). This evidence created a question of fact as to whether Marriott had the duty to exercise ordinary care to safeguard its customers against the foreseeable risk of employing such an unethical massage therapist. See *Sturbridge Partners*, 267 Ga. at 787.

Nevertheless, the existence of a jury question on Marriott's duty does not preclude the grant of a directed verdict to Marriott on the premises liability claim. Tomsic was also required to show a legally attributable causal connection between Marriott's conduct and her injury. See *Walker*, 303 Ga. App. at 712 (1); *Niles v. Bd.*

21

*of Regents of the Univ. Sys. of Georgia*, 222 Ga. App. 59, 61 (2) (473 SE2d 173) (1996). Tomsic alleged that Marriott breached its duty by not adequately investigating Sumner's background before hiring him and by not warning her that Sumner had not been adequately investigated. Consequently, like her negligent hiring and retention claim, Tomsic's premises liability claim required that she show a causal connection between Sumner's background and the injuries she sustained. Just as the evidence did not establish this element of causation in the negligent hiring and retention claim, it also did not establish causation in the premises liability claim, and for that reason the trial court did not err in granting a directed verdict on that claim.

c. *Excluded polygraph evidence.*

Tomsic argues that the trial court erred in excluding expert testimony from a psychologist that she sought to introduce regarding the results of a polygraph test. Even if the court should have allowed this evidence, but see *Munford, Inc. v. Anglin*, 174 Ga. App. 290, 294 (3) (329 SE2d 526) (1985), the polygraph evidence pertains to the credibility of Tomsic's account of what happened during the massage. But, for purposes of reviewing the grant of directed verdicts, we already have viewed Tomsic's account in the light most favorable to her. Tomsic offers no argument for

22

why the excluded polygraph evidence should have precluded the directed verdicts, and we find none.

4. *Dismissal of failure to warn claim.*

Tomsic argues that the trial court erred in dismissing, under OCGA § 9-11-12 (b) (6), her claim that Marriott breached a duty to warn her that it did not perform adequate due diligence in hiring its massage therapists. It is true that "if, within the framework of the complaint, evidence may be introduced which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied." (Citation and punctuation omitted.) *Infinite Energy v. Pardue*, 310 Ga. App. 355, 355-356 (1) (713 SE2d 456) (2011). But the failure to warn that Tomsic alleged in her complaint was not a separate basis for liability but rather a means by which Marriott might have breached a duty of care it owed under a theory of premises liability. See *Crapp v. Elberta Crate & Box Co.*, 223 Ga. App. 902, 904-905 (479 SE2d 101) (1996) (describing defendant's failure to warn as breach of its duty of ordinary care in premises liability action); see also *Lau's Corp.*, 261 Ga. at 492-493 (1), (2) (analyzing claim of failure to warn within framework of premises liability cause of action); *Benson-Jones v. Sysco Food Svcs. of Atlanta*, 287 Ga. App. 579, 584 (3) (651 SE2d 839) (2007) (noting, in analysis of premises liability

23

claim, that "[a]s a general rule, an owner or occupier of land is liable to invitees for injuries they sustain as a result of his failure to warn them of dangers which he was aware of, or in the exercise of reasonable care should have known") (citation and punctuation omitted). Given that the failure to warn claim is subsumed within the premises liability claim, which proceeded to trial, we find no error in the trial court's pre-trial dismissal of the failure to warn claim.

*Judgment affirmed. Barnes, P. J., concurs. McMillian, J., concurs fully in Division 1 and concurs in the judgment only as to Divisions 2 and 3.*