**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 23, 2021**

# In the Court of Appeals of Georgia

A21A0719. TROIKA ENTERTAINMENT, LLC et al. v. MENDEZ.

McFADDEN, Presiding Judge.

Troika Entertainment, LLC, Troika Entertainment Group, Inc., and Troika Entertainment, Inc. appeal the denial of a motion to open default. Contrary to their arguments on appeal, they have not demonstrated that the trial court applied the wrong statute or abused her discretion in denying their motion. So we affirm.

1. *Factual background.*

Shari Mendez was breaking down a set after a production of the show The Color Purple when another person lowered a panel onto her finger, severing the tip. On May 7, 2019, she filed suit against the Troika defendants, alleging that the person who lowered the panel onto her finger was their employee. She also sued several John Doe defendants.

The Troika defendants' registered agent for service of process was served with the summons and complaint on May 8, 2019. The registered agent forwarded the service documents to the Troika defendants by email. On May 24, 2019, since the Troika defendants had not opened the emails, the registered agent sent them hard copies of the summons and complaint via Federal Express. The tracking information indicated that the documents were delivered to the Troika defendants on May 28, 2019.

The Troika defendants did not file an answer to the complaint within 30 days of service of the summons and complaint, see OCGA § 9-11-12 (a), so the case "automatically bec[a]me in default[.]" OCGA § 9-11-55 (a).

On September 30, 2019, the trial court entered a default judgment on the issue of liability against the Troika defendants. Eleven days later, Mendez filed an amended complaint. The amended complaint substituted The Color Purple on Tour, LLC for a John Doe defendant; otherwise the complaint was largely the same as the original and alleged no new causes of action. In October 2019, the court conducted a damages hearing and awarded Mendez judgment against the Troika defendants for $500,000.

In February 2020, the Troika defendants filed a motion to open default or, in the alternative, to set aside the judgment. They attached to their motion an answer to

2

the complaint. The trial court denied the motion and the Troika defendants filed this appeal.

2. *Labeling the judgment as "final" did not harm the Troika defendants*.

The Troika defendants argue that the trial court erred by labeling the judgment awarding damages to Mendez as a "final verdict and judgment against Troika parties" when The Color Purple remained a party. And, they argue, because the judgment was not final, they could avail themselves of the liberal criteria of OCGA § 9-11-55 (b), which allows a trial court to open default in certain circumstances before final judgment, and were not limited by the more stringent criteria of OCGA § 9-11-60 (d), which allows a trial court to set aside a judgment in certain circumstances after final judgment has been entered. *Pine Tree Publishing v. Community Holdings*, 242 Ga. App. 689, 690 (531 SE2d 137) (2000).

We agree that the judgment awarding damages against the Troika defendants was not a final judgment because The Color Purple was still a party. So OCGA § 9-11-55 (b) applied. *Daniell v. Heyn*, 169 Ga. App. 772 (315 SE2d 284) (1984) (because only one of two defendants defaulted, judgment was not final and court had discretion to set aside default under OCGA § 9-11-55 (b)). Contrary to the trial court's ruling, Mendez was not required to seek leave of court to add The Color

3

Purple as a party. See *Bishop v. Farhat*, 227 Ga. App. 201, 202 (1) (489 SE2d 323) (1997) (holding that a plaintiff need not obtain leave of court to add a party under OCGA § 9-11-21 "when a plaintiff seeks to substitute a named defendant for a 'John Doe.'") (emphasis omitted).

But the error was not harmful because the trial court treated the case both ways: the court first held that the Troika defendants were not entitled to set aside the judgment under OCGA § 9-11-60 (d). She then assumed arguendo that the judgment was not final and applied OCGA § 9-11-55 (b), finding that the Troika defendants were not entitled to open default under that statute. So the Troika defendants have not shown that the trial court's labeling of the judgment as final amounted to reversible error.

3. *Mendez's filing of the amended complaint did not cure the Troika defendants' default.*

The Troika defendants next argue that Mendez's amended complaint superseded the original complaint and thus cured their default of the allegations in the original complaint. We disagree. A defendant's failure to timely answer an original complaint puts the case into default of the allegations in that original complaint — even if the plaintiff files an amended complaint. *Water's Edge Plantation*

4

*Homeowner's Assn. v. Reliford*, 315 Ga. App. 618 (727 SE2d 234) (2012) (defendants were in default of allegations of original complaint, which they did not answer, but not of allegations made for the first time in the amended complaint, because they were not required to answer the amended complaint); *Day v. Norman*, 207 Ga. App. 37 (1) (427 SE2d 31) (1993).

4. *Denial of motion to open default*.

The Troika defendants argue that the trial court erred by denying their motion to open default because they satisfied the four conditions precedent and demonstrated excusable neglect and a proper case. We cannot say that the trial court abused her discretion in denying the motion.

Under OCGA § 9-11-55 (b), at any time before final judgment, a trial court has the discretion to open default "on one of three grounds if four conditions are met. The three grounds are: (1) providential cause, (2) excusable neglect, and (3) proper case. The four conditions [precedent] are: (1) a showing made under oath, (2) an offer to plead instanter, (3) announcement of ready to proceed with trial, and (4) setting up a meritorious defense." *Wright v. Mann*, 271 Ga. App. 832 (611 SE2d 118) (2005) (footnote omitted). "Compliance with the four conditions is a condition precedent and once met[,] the question of whether to open the default on one of the three grounds

5

rests within the sound discretion of the trial court." *Karan, Inc. v. Auto-Owners Ins. Co.*, 280 Ga. 545, 547 (629 SE2d 260) (2006) (citation omitted). "The sole function of an appellate court reviewing a trial court's denial of a motion to open default is to determine whether all the conditions set forth in OCGA § 9-11-55 have been met and, if so, whether the trial court abused its discretion based on the facts peculiar to each case." *K-Mart Corp. v. Hackett*, 237 Ga. App. 127, 128 (1) (514 SE2d 884) (1999) (citation and punctuation omitted).

The trial court found that the Troika defendants satisfied the four conditions precedent for setting aside the default, but that they did not demonstrate either excusable neglect or proper case, the two grounds they claim. The court ruled that although the Troika defendants asserted that they suffered email problems that affected their receipt of the summons and complaint, they failed to respond to the hard copy of the documents, which had been delivered by Federal Express; that they were relying on Mendez's attorney to dismiss them from the complaint once she added The Color Purple as a defendant, but they did not check whether they had been dismissed; that they failed to appear at the damages hearing of which they had been notified; and that they relied on The Color Purple's insurer to represent them,

6

although the insurer had instructed them not to do so. We hold that the trial court did not abuse her discretion.

(a) *Excusable neglect*.

The Troika defendants argue that they reasonably anticipated that their insurance broker would handle the case, so their failure to answer amounted to excusable neglect. We hold that the trial court did not abuse her discretion in rejecting the claim of excusable neglect.

Excusable neglect "refers to cases where there is a reasonable excuse for failing to answer." *Bowen v. Savoy*, 308 Ga. 204, 207 (839 SE2d 546) (2020) (citation and punctuation omitted). To show excusable neglect, the Troika defendants point to the affidavit of their director of engagements, Barrett Newman. Contrary to the Troika defendants' argument, Newman did not testify that he believed their insurance broker would handle the case on their behalf. Rather, Newman testified that he believed The Color Purple's insurer would handle the Troika defendants' defense. Specifically, Newman testified about only two communications he had with the insurance broker: (1) that once the Troika defendants received notice of the lawsuit, Newman contacted the insurance broker, who said that he would contact Mendez's counsel to inform her that The Color Purple, not the Troika defendants, was the proper defendant; and (2)

7

that once the Troika defendants learned of the default judgment, they contacted their insurance broker regarding a defense by The Color Purple's insurer.

On the other hand, Newman testified that pursuant to an indemnity agreement with The Color Purple, the Troika defendants requested that The Color Purple's insurance carrier provide them with a defense, but two days later, the insurer notified them that it was reviewing coverage and had not yet determined whether they were entitled to coverage under The Color Purple's policy. The insurer suggested that until it determined that the Troika defendants were entitled to coverage, they should "retain [their] own attorney to protect [their] interests."

So the evidence does not compel a finding that the Troika defendants reasonably relied on their insurance broker to handle the case. See generally *Ellis v. Five Star Dodge*, 242 Ga. App. 474, 476 (1) (529 SE2d 904) (2000) (finding that trial court abused its discretion in opening default where affidavit "failed to demonstrate excusable neglect as a matter of law"); accord *Tomsic v. Marriott Intl*., 321 Ga. App. 374, 377 (2) (a) (739 SE2d 521) (2013) (physical precedent only) (recognizing that affidavits which fail to address the issue at hand are insufficient). "The facts of this case do not establish as a matter of law the existence of a reasonable excuse for

failing to file a timely answer." *Ga. Farm Buildings v. Willard*, 170 Ga. App. 327, 330 (4) ( 317 SE2d 229) (1984).

(b) *Proper case*.

The Troika defendants argue that they have shown a proper case for opening default. We hold that the trial court did not abuse her discretion in rejecting the claim of proper case.

> The "proper case" ground for opening default has been construed to confer discretion on the trial court broader than that conferred on the other two grounds, as if reaching out to take in every conceivable case where injustice might result if the default were not opened, although the defendant's failure to file a timely answer must not have resulted from wilful or gross negligence. This is an intensely fact-specific inquiry. It includes consideration of whether the defaulting party acted promptly to open the default upon learning no answer had been either filed or timely filed.

*Kittrell v. Dream Builder Investment*, 354 Ga. App. 687, 688 (1) (840 SE2d 461) (2020) (citations and punctuation omitted). "Our review of [the proper-case ruling] is highly deferential, and we will reverse only if the trial court manifestly abused [her] discretion." Id.

9

The Troika defendants argue that they have demonstrated a proper case because a "ransomware attack. . . utterly destroyed [their] internal processing system for receiving service documents by email and by FedEx delivery indefinitely." They do not elaborate how a ransomware attack affected their ability to respond to the documents that had been sent to them by Federal Express. The Troika defendants argue that they first learned of the lawsuit on October 10, 2019, when they received notice of the damages hearing, although they concede that hard copies were delivered to them on May 28, 2019. Even assuming the Troika defendants first learned of the lawsuit on October 10, 2019, they did not file their motion to open default and answer until February 28, 2020, 141 days later.

We cannot say that the trial court manifestly abused her discretion in finding that the Troika defendants did not make out a proper case to open default.

*Judgment affirmed. Rickman, C. J., and Senior Appellate Judge Herbert E. Phipps concur*.